T.C. Memo. 2011-182

UNITED STATES TAX COURT

JOHN L. CHURCHILL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19712-07L.                    Filed August 1, 2011.

John L. Churchill, pro se.

<u>Hans F. Famularo</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  John Churchill offered to settle thirteen
years of tax debts totaling more than $250,000 for only $2,500.
The Commissioner rejected this offer because it was based on his
income alone, even though his bride had a good and steady income,
and it's IRS policy in community-property states to consider both
spouses' incomes even if only one has a tax debt.  This made the

bride unhappy, and she told Churchill that if he didn't solve his tax problems, she would leave. He didn't, and she did.

The question in this case is whether, under these circumstances, the Commissioner abused his discretion in rejecting Churchill's offer.

## Background

Churchill, a real-estate agent in Riverside County, California, works on commission. His fortunes vary from year to year--his income ranged from a high of $49,146 in 1996 to a low of $1,612 in 2005. Although he filed returns for most years, he didn't pay the income taxes that he owed for 1992 through 2004.[1]

Churchill married Sharon Schwarz in 2001, but they both continued to file separate tax returns. Churchill says the marriage was one of convenience, endured only so he could get on Schwarz's health insurance. It was certainly a marriage that was in trouble from the start--the couple separated in 2004, and Churchill filed for divorce in May 2005. But he never followed through, and he and Schwarz reunited in January 2006. Five months later, though, the Commissioner finally came to collect.

He began by sending a notice of filing a federal tax lien for Churchill's 1992-2004 tax debts and, two months later, a

---

[1] The Commissioner prepared substituted returns under section 6020(b) for Churchill's 1992, 1993, 1994, and 2002 tax years. (Unless otherwise noted, all section references are to the Internal Revenue Code, and Rule references are to our Rules of Practice and Procedure.)

final notice of intent to levy for the 1998-2004 tax debts. Churchill asked for a collection due process (CDP) hearing under sections 6320 and 6330, and wanted to discuss an offer in compromise as a collection alternative to the lien and levy. But there was even more at stake--Schwarz warned him that if he did not fix his tax problems she would divorce him. Churchill submitted a cash offer of $2,500.

At the CDP hearing, the Appeals officer discussed both the cash offer and the possibility of an installment agreement with Churchill, Schwarz, and Churchill's attorney. She asked for additional and updated financial information from both Churchill and Schwarz. Churchill argued that his very low 2005 income-- remember that it was only $1,612--was an accurate forecast of what he would likely earn for the next five years. He was especially concerned about his health, he explained, and submitted a doctor's note listing his ailments. The CDP process stalled for a time because, as the IRS's own records show, Churchill had a third heart attack while Appeals pondered his offer.

The Appeals officer asked for more information, but neither Churchill nor Schwarz responded, and in May 2007, the Appeals officer sent Churchill a letter with a preliminary analysis of his offer. She stressed that with the information she had available, the IRS would reject Churchill's offer because it was

so much lower than what she calculated to be his "reasonable collection potential" (RCP).

This is the heart of the case. The Appeals officer calculated Churchill's RCP by adding Schwarz's 2005 income to his. Doing so meant Churchill had monthly income of $5,828 and expenses of $4,400, leaving $1,428 available for tax payments. The Appeals officer multiplied $1,428 by 86 (the number of months she thought an offer should last) and found his RCP to be $122,808. (She included no assets in her computation because neither spouse had any significant equity in major property like real estate or cars.) She wrote Churchill that $122,808 was the minimum offer the Commissioner would accept, and she recommended that he increase his offer to this amount or provide additional information if he thought she should lower it.

Churchill didn't respond, so she recommended that his offer be rejected and the lien and levy sustained. The Commissioner then issued the two notices of determination which Churchill appeals here. Before we tried the case in Los Angeles--Churchill lived in California when he filed the petition--the parties agreed to submit it for decision under Rule 122. After the CDP hearing but before the notices of determination and before the case was submitted, the tax agony proved too much for Schwarz. Her marriage with Churchill was dissolved. See Churchill v.

Schwarz, No. RID209993 (Cal. Super. Ct. July 31, 2007) (notice of entry of judgment).

## Discussion

When we review a CDP hearing where the underlying liability isn't in question, we review the Appeals officer's actions for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 609-10 (2000). A decisionmaker abuses his discretion "when [he] makes an error of law * * * or rests [his] determination on a clearly erroneous finding of fact * * * [or] 'applies the correct law to facts which are not clearly erroneous but rules in an irrational manner.'" United States v. Sherburne, 249 F.3d 1121, 1125-26 (9th Cir. 2001) (quoting Friedkin v. Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996), overruled on other grounds Murray v. Bammer (In re Bammer), 131 F.3d 788 (1997)(en banc)); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402-03 (1990) (same).

CDP hearings often lead to settlements because they are a place where a taxpayer can suggest alternatives to the harsher methods the IRS uses to collect debts. Sec. 6330(c)(2)(A)(iii). One such alternative is an offer in compromise, where the taxpayer asks the Commissioner to settle old tax debt for less than its full value, on one of three grounds: doubt as to liability, doubt as to collectibility, or promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Churchill's offer was based on doubt as to collectibility,

meaning that Churchill was saying that his assets and income weren't enough to pay the tax debt. Id. par. (a)(1), (b)(2). The Commissioner has discretion to accept or reject the offer, as long as he considers all of the facts and circumstances. Id. par. (c).

The Commissioner has guidelines to enable Appeals officers to evaluate offers and maintain some reasonable degree of uniformity. The key concept under these guidelines is the calculation of a taxpayer's RCP. Internal Revenue Manual (IRM) pt. 5.8.5.1 (Sept. 1, 2005). An Appeals officer's calculation of an RCP depends on the officer's estimate of the taxpayer's likely future income and the current value of his assets. The officer estimates future income by calculating current monthly disposable income (income minus necessary living expenses) and multiplies the result by a certain number of months (the multiplier). Id. pt. 5.8.5.5(1). The multiplier depends on which type of payment plan the taxpayer offered. Id. If a taxpayer's offer is for a one-time cash payment, like Churchill's, the starting point is 48 months. Id. pt. 5.8.5.5(1)(A). The multiplier can then be increased or decreased for considerations that may affect a taxpayer's future income or expenses, including his age or health. Id. pt. 5.8.5.5(4) and (5).

The law gives the Commissioner very wide discretion in this area, and we generally uphold the rejection of an offer when the

Appeals officer has followed the IRM.  <u>Atchison v. Commissioner</u>, T.C. Memo. 2009-8.  The IRM directs Appeals officers to reject offers for less than a taxpayer's RCP unless the taxpayer proves he has special circumstances.[2]  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.  Without proof of special circumstances, the Appeals officer rejected Churchill's offer because it was significantly less than his RCP.  We look to see if her calculation of the RCP was reasonable, or at least not arbitrary, capricious, or without a basis in law or fact.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 321 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

Churchill raises several issues in his petition:[3]  first, he claims his offer was wrongly rejected because the Appeals officer considered income and assets belonging to his now ex-wife. Churchill also argues that Schwarz's income and assets shouldn't be included because their marriage was one of convenience.  He

---

[2] "Special circumstances" include economic hardship to the taxpayer if the Commissioner collected the full RCP, or other considerations of public policy or equity that would also justify accepting less.  IRM pt. 5.8.4.3(4) (Sept. 1, 2005); see also <u>Murphy v. Commissioner</u>, 125 T.C. 301, 309 (2000), affd. 469 F.3d 27 (1st Cir. 2006).  Churchill has not argued either of these issues here.

[3] Churchill failed to file a posttrial brief.  While the Court could dismiss his case entirely, see Rules 123, 151(a); <u>Stringer v. Commissioner</u>, 84 T.C. 693 (1985), affd. 789 F.2d 917 (4th Cir. 1986), we will not do so.  We do, however, deem Churchill to have conceded any issues that he did not otherwise contest.  See <u>Diesel Country Truck Stop, Inc. v. Commissioner</u>, T.C. Memo. 2000-317.

states that the Appeals officer should have included expenses for health insurance and didn't consider his age and current medical condition in her RCP calculation.

We start with the easy questions. Churchill claims that the Appeals officer abused her discretion in not considering his medical condition. This would generally be taken into account by decreasing the multiplier used in the RCP. See IRM pt. 5.8.5.5 (Sept. 1, 2005). It is true that the notices of determination do not recite specific consideration of his age and health. The Appeals officer's notes from the CDP hearing, however, show that she knew of Churchill's health concerns and asked him about his ability to work over the next five years. The record indicates that Churchill agreed that despite his health concerns his 2005 income was a good predictor for the next five years. Though his petition states that he could work only two to three more years, he did not dispute this point during the CDP hearing. Therefore we cannot find that the Appeals officer abused her discretion in not applying a 24- or 36-month multiplier.[4]

---

[4] It is not clear why the Appeals officer used 86 months when it appeared that Churchill made a cash offer. She even explained the "48/60 month factor" to Churchill during the CDP hearing. See IRM pt. 5.8.5.5 (Sept. 1, 2005). We note, however, that using a 48-month factor (the appropriate starting point for a cash offer), Churchill's RCP would be $68,544, still well above the $2,500 offered. Even if we further discounted for his age and health, applying his 24-month estimate, Churchill's RCP would be $34,272 and his offer would still have been rejected.

Churchill also claims he provided evidence of the cost of his health insurance at the CDP hearing even though the Appeals officer noted in the file that he had not. The record does have a letter from the Appeals officer to Churchill stating that she had no evidence of this cost and giving him an opportunity to send it in. We find no error by the Appeals officer here, and Churchill never argued the point to us. The lack of proof means she did not abuse her discretion in excluding the cost of Churchill's health insurance.

This brings us to the big money--should the Appeals officer have considered Schwarz's income and assets in evaluating Churchill's offer? And if so, can we revisit that consideration here in light of Churchill's newly single status?

California is famously a community-property state. Cal. Fam. Code sec. 760 (West 2004). This means that spouses in California are generally liable for each other's debts, even if incurred before the marriage. Cal. Fam. Code sec. 910(a) (West 2004); In Re Soderling, 998 F.2d 730, 733 (9th Cir. 1993). Because Churchill was married at the time of the CDP hearing, the Appeals officer was right to consider Schwarz's assets and income

in evaluating his offer.[5]  See sec. 301.7122-1(c)(2)(ii)(B),
Proced. & Admin. Regs.

Churchill also argues that the Appeals officer improperly
included property owned by Schwarz in which she didn't have any
equity.  The Appeals officer, however, agreed with Churchill on
this point.  We conclude again that the Appeals officer's RCP
calculation was reasonable based on the information she had, and
so not an abuse of discretion.

Churchill likewise argues that the Appeals officer
improperly included as a source of future income distributions
from an empty retirement account that Schwarz owned.  We can find
no evidence of this.  It appears that the Appeals officer used
Schwarz's wages, which included deferred compensation--presumably
contributions to a retirement account.  Using current wages
correctly estimates Schwarz's future income; therefore, even if
the retirement account is empty, it would not change the RCP
calculation.

An Appeals officer necessarily reviews an offer by looking
at a snapshot of a taxpayer's financial situation at the time of
the CDP hearing.  See Nihiser v. Commissioner, T.C. Memo. 2008-
135.  In deciding whether an Appeals officer abused her

---

[5] Churchill claims that Schwarz's assets and income should
not be included because their marriage was one of convenience.
The Commissioner does not distinguish among motivations for
marriage:  for income-tax purposes, married is married.

discretion, it obviously makes no sense to consider information she didn't have at the time. Magana v. Commissioner, 118 T.C. 488, 494 (2002). We therefore exclude as immaterial any evidence that the Appeals officer didn't consider. Murphy, 125 T.C. 301; Eliason v. Commissioner, T.C. Memo. 2002-227.

But Churchill argues this case presents an unusual issue--he is now divorced. So what happens when a taxpayer has a change in circumstances after the CDP hearing, but before we decide his case?

At one time, we thought we could consider new information where it became available after the CDP hearing--at least when it wasn't the taxpayer's fault that he didn't raise the issue before. See Magana, 118 T.C. at 494 ("This case does not involve an allegation of recent, unusual illness or hardship * * * that might cause us to make an exception to the general rule set forth herein and to consider petitioner's new hardship argument"). A few years later, however, we firmly limited our review of section 6330(c)(2) issues to those presented in the CDP hearing. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). Accordingly, the Court cannot now update Churchill's snapshot and make our own determination. But can we remand?

Absent limiting statutes, courts generally have "the inherent authority to issue such orders as they deem necessary

and prudent to achieve the 'orderly and expeditious disposition of cases.'" Williams v. Commissioner, 92 T.C. 920, 932 (1989) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65 (1980), and quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)). In Friday v. Commissioner, 124 T.C. 220, 221-22 (2005), we noted in dicta that we can remand to an agency if it retains jurisdiction over the underlying case, such as the Appeals Office does in a CDP determination. See sec. 6330(d)(2); sec. 301.6330-1(h)(1), Proced. & Admin. Regs.

We certainly can remand in CDP cases when an Appeals officer abused his discretion in some way. See Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214 (remanding because the Appeals officer determined to proceed with collection without making the requisite verifications). We also remand when, for example, the Appeals officer didn't develop the record enough for us to properly review it. See Hoyle v. Commissioner, 131 T.C. 197, 204-05 (2008).

One might consider remand to be, in both these situations, a response to an error we've found that we want the Appeals Office to fix. But we've also remanded where the law changed between the CDP hearing and the Tax Court trial if that may have affected a taxpayer's presentation of his case. Harrell v. Commissioner, T.C. Memo. 2003-271. We've even hinted that we might remand when the Appeals Office didn't abuse its discretion and the law didn't

change--as long as the remand would be "helpful".  Wells v. Commissioner, T.C. Memo. 2003-234 n.6, affd. 108 Fed. Appx. 440 (9th Cir. 2004); see also Ashlock v. Commissioner, T.C. Memo. 2008-58 (noting taxpayer declined remand to consider changed financial circumstances).  Phrased another way, "we return a case to Appeals if we consider a rehearing 'necessary or productive.'" Martin v. Commissioner, T.C. Memo. 2003-288 (citing Lunsford v. Commissioner, 117 T.C. 183, 189 (2001)), affd. 436 F.3d 1216 (10th Cir. 2006).

In this case, we take the hint we've made and hold that remand is appropriate in cases where there has been a material change in a taxpayer's factual circumstances between the time of the hearing and the time a case lands on our trial calendar.  As we held in Giamelli, it's not sensible for us to hold that the Appeals Office has abused its discretion in failing to consider information that it didn't have any way of knowing about.  129 T.C. at 115.  We said there that we didn't want to usurp the Appeals officer's role or frustrate the statutory administrative review process by litigating new issues without prior consideration by the Commissioner.  Id. at 114-15; see also Hoyle, 131 T.C. at 201-02.

Even more compelling is that the Supreme Court has held that when there is a question of "changed circumstances" raised on

appeal, well-established principles of administrative law[6] will generally require the issue be remanded back to the agency for its consideration. <u>INS v. Ventura</u>, 537 U.S. 12, 14-18 (2002); see also <u>SKF USA, Inc. v. United States</u>, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (remand generally required when subsequent events may affect the validity of the agency action). It is clear that remand doesn't "encroach upon administrative functions." <u>Ford Motor Co. v. NLRB</u>, 305 U.S. 364, 374 (1939).

We therefore hold that we do have authority to remand a CDP case for consideration of changed circumstances when remand would be helpful, necessary, or productive. This standard is satisfied in this case. This means that the answer to the question with which we began--did the Commissioner abuse his discretion in declining Churchill's offer in compromise--is that we can't say yet.[7]

---

[6] An appellate court cannot substitute its judgment for that of the agency. <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002). Thus an appellate court "'is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such inquiry.' * * * Rather, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" <u>Id.</u> (quoting <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985)).

[7] When we remand a case to IRS Appeals, "the further hearing is a supplement to the taxpayer's original section 6330 hearing, [and] not a new hearing." See <u>Kelby v. Commissioner</u>, 130 T.C. 79, 86 (2008). The Commissioner then issues supplemental determinations after the further hearing, which we can review. <u>Id.</u> Once the Commissioner issues supplemental determinations, however, we cannot review any of the prior notices of

(continued...)

Because Churchill hasn't brought any changed circumstances regarding his health-insurance expenses or medical condition to our attention, the Commissioner need not reconsider these expenses, but should of course apply the correct monthly multiplier in calculating Churchill's new RCP.  See Indus. Investors v. Commissioner, T.C. Memo. 2007-93 n.6 (harmless errors should also be fixed on remand) (citing Kerner v. Celebrezze, 340 F.2d 736, 740 (2d Cir. 1965)).

An appropriate order

will be issued.

---

[7](...continued)
determination.  See id. ("[T]he position of the Commissioner that we review is the position taken in the last supplemental determination").