T.C. Memo. 2015-215

UNITED STATES TAX COURT

ERIC EDWARD CHANDLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6866-12L.                           Filed November 4, 2015.

Eric Edward Chandler, pro se.

<u>Inga C. Plucinski-Holbrook</u> and <u>Charles B. Burnett</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by

the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax

[*2] lien (NFTL) filing.[1]  The sole question for decision is whether the IRS settlement officer (SO) abused her discretion in rejecting petitioner's offer-in-compromise (OIC).  We hold that she did not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  Petitioner resided in Utah when he filed his petition.

Petitioner has been a frequent visitor to this Court.[2]  This case involves his Federal income tax liabilities for 1988, 1989, 1990, 1991, 2005, and 2008.  In August 1994 petitioner filed delinquent returns for 1988-1991.  He did not pay the full amounts of tax shown as due on those returns, and the IRS assessed the tax liabilities that petitioner had reported.  After petitioner failed to pay these liabilities on notice and demand, the IRS attempted to collect the liabilities by

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times.  We round all dollar amounts to the nearest dollar.

[2]See, e.g., Chandler v. Commissioner, T.C. Dkt. No. 6159-83 (Mar. 26, 2013) (sustaining tax deficiencies against petitioner for 1979 and 1980); Chandler v. Commissioner, T.C. Dkt. No. 11831-84 (Mar. 26, 2013) (sustaining tax deficiencies against petitioner for 1981); Chandler v. Commissioner, T.C. Dkt. No. 22599-86 (Mar. 26, 2013) (sustaining tax deficiencies against petitioner for 1982); Chandler v. Commissioner, T.C. Memo. 1991-425 (sustaining tax deficiencies and penalties against petitioner for 1984, 1985, and 1986).

**[*3]** levy.  In 2008 we sustained that levy, and our decision was affirmed by the U.S. Court of Appeals for the Tenth Circuit.  Chandler v. Commissioner, T.C. Dkt. No. 7252-07L (April 3, 2008) (bench opinion), aff'd, 327 F. App'x 763 (10th Cir. 2009).

Petitioner likewise filed delinquent returns for 2005 and 2008.  He did not pay the full amounts of tax shown as due on those returns, and the IRS assessed the tax liabilities that petitioner had reported.  In July 2010, in an effort to collect petitioner's unpaid tax liabilities for 2005 and 2008, and in a further effort to collect his unpaid tax liabilities for 1988-1991, the IRS sent him a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing.  Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing.

Shortly after requesting the CDP hearing petitioner submitted a Form 656, Offer in Compromise, stating that his offer was based on "doubt as to collectibility."  At that time his unpaid Federal income tax liabilities exceeded $600,000.  In his OIC he offered to pay $122 per month for 24 months, for a total of $2,938.  He stated that his individual monthly income was then $4,262; that total household monthly income (including his wife's earnings) was $7,929; and that his monthly expenses were $4,116.

**[*4]**   In January 2011 the IRS rejected this OIC, expressing its belief that petitioner had submitted the offer solely for the purpose of delaying IRS collection action.  Petitioner replied by requesting "the Form(s) necessary to appeal this decision," which the IRS treated as a request for a CDP hearing.  That request was forwarded to the IRS Appeals Office which, on July 21, 2011, offered petitioner a combined CDP hearing covering both the NFTL filing and the rejection of his OIC.  That hearing was scheduled to be held by telephone on August 11, 2011.

The IRS letter informed petitioner that the SO would need further information about how he had spent funds that he had withdrawn from his retirement accounts during 2006, 2007, and 2008.  Petitioner withdrew more than $400,000 from these accounts during those years.  He failed to pay tax on these withdrawals, and he did not use any of the proceeds to pay down his outstanding Federal income tax liabilities.

On August 8, three days before the scheduled hearing, petitioner called the SO and requested additional time to prepare.  She agreed to postpone the CDP hearing to September 8.  During the hearing held on that date petitioner did not contest his underlying tax liability for any of the years at issue but requested a collection alternative.  The SO informed him that he was ineligible, in light of his income, to have his account placed in currently not collectible (CNC) status.  She

[*5] informed him that his OIC was unacceptable because he would be treated as having dissipated, and thus as continuing to own for OIC purposes, the assets he had withdrawn from his retirement accounts during 2006-2008. Petitioner was evasive when asked how he had spent this $400,000.

While rejecting petitioner's OIC, the SO indicated that a "partial pay" installment agreement might be acceptable to the IRS. On September 13, 2011, she sent petitioner a draft installment agreement on Form 433-D, Installment Agreement. The SO thereby proposed that petitioner make monthly payments of $874 for the first year and monthly payments of $1,732 thereafter.

When petitioner failed to accept this agreement or otherwise respond, the SO decided that the case should be closed. She determined that petitioner's OIC had to be rejected because his reasonable collection potential (RCP), including his dissipated retirement account assets, was $518,579, in contrast to his offer of $2,938. The SO determined that petitioner had $1,732 in disposable income per month (after allocating a portion of the household expenses to his wife's income) and that he would accordingly qualify for a "short term deferred payment offer" of $103,920 (60 monthly installments of $1,732). But since petitioner had declined to accept this offer, the IRS sent him, on February 14, 2012, a Notice of Determi-

**[*6]** nation Concerning Collection Action that rejected his OIC and sustained the NFTL filing.

Petitioner timely petitioned this Court for review of that determination. Trial of this case was postponed several times after petitioner informed the Court that he had been diagnosed with, and was being treated for, cancer. Trial was ultimately held on June 1, 2015. When questioned at trial about his retirement account withdrawals, petitioner testified that his lawyer had advised him to withdraw the money and "just go spend it." He testified that he spent this money "on anything and everything"; that he had no records of what he spent the money on; and that he simply "had a good time." He testified that his monthly medical expenses had increased from $144 at the time of the CDP hearing to $310 currently on account of his cancer treatments.

## OPINION

Where (as here) the taxpayer did not or cannot dispute his underlying tax liability at the CDP hearing, the Court reviews the IRS' determination for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000); Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. Abuse of discretion exists

[*7] when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

In deciding whether the SO abused her discretion in sustaining the NFTL filing, we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Our review of the record establishes that the SO analyzed the transcript of petitioner's account, determined that the tax liabilities at issue were properly assessed, and determined that all other requirements of applicable law and administrative procedure were followed. The only issue is whether petitioner raised any legitimate question concerning his entitlement to a collection alternative.

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability. The regulations set forth three grounds for such compromise: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. The Secretary may compro-

**[\*8]** mise a tax liability based on doubt as to collectibility--the ground petitioner alleged in his OIC--where the taxpayer's assets and income render full collection unlikely. Id. subpara. (2). Conversely the IRS may reject an OIC where the taxpayer's RCP is greater than the amount he proposes to pay. See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Appeals officers are generally directed to reject offers substantially below the taxpayer's RCP where the offer is premised, as it was here, on doubt as to collectibility. See Rev. Proc. 2003-71, 2003-2 C.B. 517.

This Court does not independently review the reasonableness of the taxpayer's proposed collection alternative. Our review is limited to ascertaining whether the SO's decision to reject that offer was arbitrary, capricious, or without sound basis in law or fact. Murphy, 125 T.C. at 320. We do not substitute our judgment for that of the SO as to the acceptability of a particular offer. See, e.g., Johnson, 136 T.C. at 488.

The SO rejected petitioner's OIC primarily because of her determination that his retirement account withdrawals during 2006-2008, which exceeded $400,000, constituted "dissipated assets" that had to be included in ascertaining his RCP. This yielded an RCP of $518,579, which vastly exceeded his offer of $2,938. "Dissipated assets" are those assets that have been sold, transferred, or

[*9] spent on nonpriority items in disregard of an outstanding tax liability. Taggart v. Commissioner, T.C. Memo. 2013-113; see Johnson, 136 T.C. at 487. The Internal Revenue Manual (IRM) instructs settlement officers to determine whether a taxpayer has dissipated assets such that they are no longer available to pay his tax liability. See IRM pt. 5.8.5.16(2) (Oct. 22, 2010). The determination whether dissipated assets should be included in the taxpayer's RCP depends on the settlement officer's evaluation of the facts and circumstances of the taxpayer's case. Id. pt. 5.8.5.16(1).

Settlement officers are counseled that taxpayers should be "afforded the opportunity to explain or verify the disposition" of transferred assets. IRM pt. 5.8.5.16(8). "If the taxpayer does not provide information showing the disposition of funds from transferred assets" such amounts should be included in his RCP. Id. pt. 5.8.5.16(5), (8). Conversely, "[w]hen it can be shown through internal research or substantiation provided by the taxpayer that the funds were needed to provide for necessary living expenses, these amounts should not be included in the RCP calculation." Id. pt. 5.8.5.16(5); see Layton v. Commissioner, T.C. Memo. 2011-194.

The SO gave petitioner multiple opportunities to explain how he disposed of the funds he withdrew from his retirement accounts during 2006-2008, but he

**[*10]** made no effort to do so. His testimony at trial that he "had a good time" spending the funds on "anything and everything" would not support the conclusion that the assets in question were expended for essential living expenses. We find that the SO did not abuse her discretion by treating petitioner's retirement account withdrawals as "dissipated assets" and rejecting his OIC for that reason.[3]

Petitioner's final argument is that we should remand this case to the Appeals Office in light of an alleged "material change in circumstances," namely, petitioner's increased monthly medical expenses owing to his cancer treatments. While we have authority to remand a CDP case for consideration of changed circumstances when remand would be "helpful, necessary, or productive," see Churchill, T.C. Memo. 2011-182, 102 T.C.M. (CCH) 116, 119, petitioner has not shown that this case meets those criteria. Regardless of the alleged $166 increase in his monthly medical expenses, petitioner's RCP will be several hundred thousand dollars above his offer of $2,938, an offer that we do not believe was made in good faith. Petitioner has been conniving for a very long time to avoid payment of his Federal income tax liabilities, and it is time to bring these delay tactics to an

---

[3]Even if the SO had excluded petitioner's dissipated assets from his RCP, she would not have abused her discretion in rejecting his OIC because his annual disposable income of $20,784 (12 × $1,732) significantly exceeded his total offer of $2,938. The SO determined that petitioner had, without regard to dissipated assets, "future income" of $103,920 available to pay his tax liabilities.

[*11] end.  Petitioner is free to submit another OIC if his circumstances legitimately so warrant.

Finding no abuse of discretion in any respect, we will sustain the SO's rejection of petitioner's OIC and the proposed collection action.  To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.