T.C. Memo. 2018-142

UNITED STATES TAX COURT

MICHAEL MCAVEY AND KATHLEEN MCAVEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2583-17L.                      Filed August 30, 2018.

<u>John P. Fazzio</u>, for petitioners.

<u>Thomas A. Deamus</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  In this collection due process (CDP) case, petitioners

seek review pursuant to section 6330(d)(1) of respondent's determination to

sustain a proposed levy to collect unpaid income tax for 2004 and 2005.[1]  This

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*2]** case is before the Court on respondent's motion for summary judgment and on petitioners' motion to remand.

Background

Petitioners' 2004 and 2005 income tax liabilities were assessed on the basis of (1) returns petitioners filed and (2) two valid section 7121 closing agreements, both completed on Form 870-LT, Settlement Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts and Agreement for Affected Items. The closing agreements relate to certain partnerships petitioners partly owned. In these agreements petitioners agreed to assessment and collection of certain liabilities (including accuracy-related penalties under section 6662).[2] Both agreements contain the following provision:

---

[1](...continued)
Revenue Code in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]The first agreement, which relates to petitioners' 2004 income tax liability, was signed by petitioners on February 9, 2013, and by respondent's agent on March 14, 2013. The second agreement, which relates to petitioners' 2005 income tax liability, was signed by petitioners on September 27, 2010, and by respondent's agent on March 20, 2013. Copies of these agreements are included as exhibits to a declaration in support of respondent's response to petitioners' motion to remand. Petitioners have raised no objection to our consideration of these documents, and we deem petitioners to have waived any such objection.

[*3]  The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive(s) the restrictions provided in IRC sections 6225(a) and 6213(a) and consent(s) to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to adjustments to partnership items, as set forth in the attached Schedule of Adjustments (plus any interest provided by law).

On November 18, 2014, respondent issued to each petitioner a Letter 1058A, Notice of Intent to Levy and Notice of Your Right to a Hearing (notices of intent to levy), with respect to petitioners' 2004 and 2005 income tax liabilities. According to the notices of intent to levy, petitioners owed $354,654 for 2004 and $392,625 for 2005, including interest and penalties through November 28, 2014.[3]

On or about December 12, 2014, petitioners submitted to respondent a Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to their 2004 and 2005 income tax liabilities.[4]  On their Form 12153, under the heading "[c]heck the most appropriate box for the reason you disagree with the filing of the lien or the levy", petitioners checked the box captioned "Other" and

---

[3]Also on November 18, 2014, respondent issued to petitioners separate notices of intent to levy with respect to their 2003 income tax liability.  According to those notices, petitioners owed $270,693 for 2003, including interest and penalties through November 28, 2014.

[4]The record does not suggest, nor do petitioners contend, that they ever asked for a CDP hearing with respect to 2003.

**[*4]** referred respondent to an attachment. The attachment states that petitioners were seeking an offer-in-compromise (OIC).

On or about February 16, 2015, petitioners submitted to respondent Form 656, Offer in Compromise, with respect to their 2003, 2004, and 2005 income tax liabilities. Petitioners checked the box to designate their OIC as an offer on the basis of "Doubt as to Collectibility" and proposed to pay a total of $300,000 to satisfy their 2003, 2004, and 2005 income tax liabilities, in monthly payments of $500 for 24 months, followed by a final payment of $288,000. Petitioners' OIC was accompanied by a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Their Form 433-A listed, among other assets, interests in partnerships and real estate in Cornwall, New York (Cornwall property). The Cornwall property was not their residence.

Petitioners' OIC was initially assigned to respondent's OIC group, which investigated petitioners' assets and income to determine how much of the debt respondent could reasonably expect to collect. According to petitioners' 2015 Form 1040, U.S. Individual Tax Returns, their partnerships had been passing through substantial amounts of income to them. On or about May 11, 2016, the OIC group found that (1) petitioners' equity in assets, including their partnership interests, residence, Cornwall property, and cars, was $1,897,350 and

[*5] (2) petitioners' annual net income was $2,454,550. Both findings appear to have been attributable in large part to petitioners' equity in and income from partnerships. On the basis of these findings, the OIC specialist group concluded that petitioners' reasonable collection potential (RCP) was at least $4,351,900. Because it concluded that petitioners' RCP exceeded their $300,000 OIC, the OIC group recommended that the OIC be denied.

Meanwhile, petitioners' CDP case had been assigned to an Appeals officer (AO). On or about June 13, 2016, their OIC was forwarded to the AO for consideration as part of the CDP hearing. On June 14, 2016, the AO issued to petitioners a Letter 4837, Appeals Received Your Request for a Collection Due Process Hearing, scheduling a CDP hearing for July 21, 2016. A telephone CDP hearing held on that date focused on whether petitioners were entitled to the OIC they had submitted. Petitioners' accountant, Stuart Becker, represented petitioners during the hearing and throughout the CDP administrative proceedings.

Following the CDP hearing, the AO corresponded with Mr. Becker. They discussed, among other things, petitioners' partnership interests. Petitioners claimed that the partnership interests were worthless and that the income they had reported on their most recent income tax returns was "self-charged interest", i.e., allegedly phantom income attributable to interest income accrued by the

[*6] partnership on loans to the partners. To support these claims petitioners provided 2015 Forms 1065, U.S. Return of Partnership Income; these returns do not, however, report any loans to partners on lines 7 of Schedules L, Balance Sheets per Books. Petitioners also provided to the AO a series of promissory notes and assumption agreements which would appear to show that Mr. McAvey is liable to the partnerships and personally liable to third parties for a share of the partnerships' liabilities.[5]

The AO ultimately remained unconvinced by petitioners' explanation of their partnership interests and income. In particular, it was unclear to the AO why partners would, over a period of several years, persist in a worthless investment that generated substantial amounts of (allegedly) phantom income. The AO suggested that petitioners amend the terms of their OIC to include a collateral agreement which would have waived petitioners' claim to certain unused net operating losses (NOLs) and capital losses; it appears that in exchange the AO agreed to exclude any possible equity in, or income from, the partnerships for purposes of calculating petitioners' RCP.

---

[5]Apparently the partnerships were all engaged in oil exploration activities, and the third parties provided oil exploration services. Petitioners claimed that the partnerships had not found any oil as of the time of the CDP hearing.

**[\*7]**  Meanwhile, the parties were discussing the Cornwall property.  Petitioners had sold the property on June 19, 2015, after requesting a CDP hearing and submitting their OIC.  The net proceeds of the sale were $133,511 after State taxes.  Petitioners claimed that they used the proceeds to pay living expenses.  The AO asked petitioners to provide evidence of the use of the proceeds.  Petitioners did not do so.  The record reflects that the AO agreed, without proof, to accept that $14,000 of the proceeds had been spent on living expenses.  The AO included the remainder of the proceeds (rounded down to the nearest $1,000)--$119,000--in petitioners' RCP as dissipated assets.

On December 2, 2016, the AO and Mr. Becker had a conference call in which they agreed on the values of petitioners' assets, except that petitioners continued to dispute the AO's inclusion in their RCP of $119,000 from the sale of the Cornwall property.  The parties also agreed that petitioners' partnership interests and income would be excluded from their RCP.[6]  The AO informed Mr. Becker that petitioners' RCP was $473,350, after including $119,000 of the proceeds of the Cornwall property sale as dissipated assets and excluding petitioners' partnership interests from consideration.  The AO informed Mr.

---

[6]Additionally, the AO's calculation of RCP does not include any income.  It appears that the AO accepted petitioners' claim that they had no appreciable nonpartnership net income.

**[\*8]** Becker that petitioners' OIC would not be accepted unless petitioners increased their offer to $473,350 (i.e., their RCP) and agreed to a collateral agreement waiving their unused NOLs and capital losses. Mr. Becker responded that if petitioners were to amend their offer as the AO had described, they would be forfeiting significant tax benefits. The AO agreed, but she reminded Mr. Becker that if respondent ultimately accepted such an offer, respondent would be waiving a significant portion of petitioners' tax liabilities in exchange. Mr. Becker stated that he would need to discuss an amended OIC with petitioners.[7] The AO asked Mr. Becker to call back by December 7, 2016.

On December 7, 2016, an associate of Mr. Becker called the AO after business hours and left a message. The AO called back on December 8, 2016, but did not reach Mr. Becker. The AO left a message that Mr. Becker should call back. On December 19, 2016, the AO called Mr. Becker again but still did not reach him; she left a message informing Mr. Becker that if he did not respond by December 20, 2016, she would close the case and issue a notice of determination. On December 28, 2016, the AO issued a notice of determination denying

---

[7]Mr. Becker also asked during the December 2, 2016, conference whether the CDP officer would allow a future income collateral agreement in lieu of increasing the $300,000 amount. The CDP officer responded that such an agreement would not be permitted.

**[\*9]** petitioners' OIC and sustaining the notices of intent to levy. The record does not reflect any calls from petitioners or their representative between the December 7, 2016, call and the date the notice of determination was issued.

While residing in New Jersey, petitioners timely filed a petition.

Discussion

The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine issue of material fact. Sundstrand Corp. v. Commissioner, 98 T.C. at 520. In deciding whether to grant summary judgment, we view the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Id.

Where the validity of the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the Commissioner's determination de novo as to that issue. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability was not properly at issue, the Court reviews the Commissioner's determination only for abuse of discretion. Id. at 182. Petitioners did not challenge their underlying liabilities at the CDP hearing--the only issue

[*10] discussed was petitioners' OIC--and therefore their underlying liabilities are not at issue in this case. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). Accordingly, we review respondent's determination for abuse of discretion.

In their petition, petitioners allege that the AO erred in: (1) including in their RCP $119,000 from the Cornwall property sale, (2) requesting that petitioners waive their NOLs and capital losses, (3) refusing to agree to "any collateral agreements offered by the taxpayers", and (4) closing the case and issuing the notice of determination too quickly.

In their opposition to respondent's motion for summary judgment and in their motion to remand, petitioners raise another issue: They now allege that the AO erred in failing to verify that the assessment of penalties (which respondent had assessed on the basis of closing agreements petitioners had signed) complied with section 6751(b)(1).[8]

## I. Petitioners' OIC

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(d) authorizes the Secretary to prescribe guidelines for officers and employees of the Internal

---

[8]Although petitioners have not amended their petition to include this issue, respondent has not objected to our considering it, and we deem respondent to have waived any such objection.

**[*11]** Revenue Service (IRS) to follow in determining whether an OIC is adequate. Regulations implementing section 7122 set forth three grounds for the compromise of a liability: (1) doubt as to liability, (2) doubt as to collectibility, and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.

Petitioners made an OIC on the basis of doubt as to collectibility. A determination of doubt as to collectibility includes a determination of ability to pay. Sec. 301.7122-1(c)(2)(i), Proced. & Admin. Regs. In determining ability to pay, the Commissioner permits taxpayers to retain sufficient funds to pay basic living expenses. Id.

> An offer to compromise based on doubt as to collectibility generally will be considered acceptable if it is unlikely that the tax can be collected in full and the offer reasonably reflects the amount the * * * [IRS] could collect through other means, including administrative and judicial collection remedies. * * * This amount is the reasonable collection potential of a case. In determining the reasonable collection potential of a case, the * * * [IRS] will take into account the taxpayer's reasonable basic living expenses. In some cases, the * * * [IRS] may accept an offer of less than the total reasonable collection potential of a case if there are special circumstances.

Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. In general, it is not an abuse of discretion for the Commissioner to refuse an OIC if the offer does not

**[\*12]** reflect the taxpayer's RCP.  E.g., Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013).

    A.  The Cornwall Property

In their petition, petitioners dispute the AO's inclusion in their RCP, as dissipated assets, of $119,000 of the proceeds from the Cornwall property sale. Respondent contends in his motion for summary judgment that this inclusion was not an abuse of discretion.  Petitioners' opposition to respondent's motion does not maintain this dispute, and we deem them to have waived or conceded this issue.

In any event, there was no abuse of discretion with respect to the Cornwall property.  A dissipated asset is any asset that has been sold, transferred, or spent on nonpriority items or debts and that is no longer available to pay the tax liability. See, e.g., Johnson v. Commissioner, 136 T.C. at 486-487.  A consequence of including dissipated assets in RCP is that the taxpayer is fictitiously assumed to have funds that he no longer has, an assumption that may be discouraging to the delinquent taxpayer.  Id.  The reason for including dissipated assets in RCP is to deter delinquent taxpayers from wasting money that they owe and should pay as tax.  Id.

[*13] The Cornwall property was sold during the administrative proceeding. The record shows that the AO asked petitioners' representative for proof that the proceeds of the Cornwall property sale had been spent on necessary living expenses (as petitioners claimed). Petitioners never provided any such proof. The AO nevertheless treated $14,000 of the proceeds as if they had been spent on necessary living expenses; the remainder was included in petitioners' RCP. In the light of petitioners' failure to provide or support a basis for excluding the remainder from their RCP, there was no abuse of discretion in this decision.[9]

## B. Collateral Agreement as to NOLs and Capital Losses

A collateral agreement is an agreement added to the basic payment agreement arising from an accepted OIC. "A collateral agreement enables the government to collect funds in addition to the amount actually secured by the offer or to add additional terms not included in the standard Form 656 agreement, thereby recouping part or all of the difference between the amount of the offer or additional terms of the offer and the liability compromised." Internal Revenue

---

[9]Petitioners also claim to have spent approximately $10,000 of the proceeds from the Cornwall property sale on their business. They argue that this would have been an acceptable use of the funds, but they have offered no proof or explanation to support their claim that these alleged business expenses (which were allegedly incurred well after their tax liabilities arose) should have taken priority over petitioners' preexisting tax liabilities; and therefore the AO did not abuse her discretion in declining to consider these alleged business expenses.

[*14] Manual (IRM) pt. 5.8.6.1 (Oct. 29, 2010). "After consideration of all the facts and circumstances, the refusal to enter into an appropriate collateral agreement may be a reason to reject the taxpayer's offer." Id.

The petition assigns error to the AO's suggestion that petitioners amend their OIC to include a collateral agreement waiving NOLs and capital losses. The petition states:

> The [A]ppeals officer insisted that the taxpayers agree to waive[] the entire amount of their [n]et [o]perating [l]osses. By insisting on this requirement, the [A]ppeals officer was demanding payment in full. This is because the tax savings, forfeited by waiving the NOL[]s, coupled with the total cash payments demanded by the [A]ppeals officer, approximately equal[]ed the full amount of the tax. This was pointed out to the [A]ppeals officer. Nevertheless, she insisted upon a relinquishment of the entire amount of the taxpayers' NOL[]s with full knowledge that the result would amount to payment in full of the tax liability thereby dispelling the notion of "compromise", that an "offer in compromise" seeks to promote.

This argument is without merit. Allowance for offers in compromise under section 7122 does not mean that the Commissioner must compromise the amount he seeks to collect if the taxpayer can fully pay.

In any event, there was no abuse of discretion in the AO's suggesting that petitioners amend their OIC to include a collateral agreement waiving NOLs and capital losses. It is generally the Commissioner's policy that collateral agreements waiving losses are appropriate to consider in situations where the taxpayer's RCP

[*15] is less than the amount of liability. See IRM pt. 5.8.6.2 (Oct. 29, 2010). As petitioners were claiming that their RCP was less than the amount of their debt, there was no abuse of discretion in the AO's request for a collateral agreement.

Moreover, it would appear that the collateral agreement was essentially offered in exchange for excluding petitioners' partnership interests and income from calculation of their RCP. The documents petitioners provided to the AO in support of their claims do not answer why, if the partnerships were worthless, the partners were choosing to report large amounts of interest income rather than wind up the partnerships. There may be a perfectly reasonable answer, but petitioners did not provide it. Consequently, it was not unreasonable for the AO to propose an alternative solution which avoided the issue, namely, the collateral agreement.

As the AO explained, the collateral agreement alternative had positives and negatives for both parties. Petitioners would have given up potentially substantial tax benefits in partial satisfaction of their debt.[10] On the other hand, respondent

---

[10]In their motion to remand, petitioners suggest that the AO's "insistence on including the collateral agreement was essentially based on concerns over * * * [petitioners'] fortunes improving". Petitioners suggest that the collateral agreement would have been unfair "because of uncertainties in petitioner's [i.e., Mr. McAvey's] financial future, as petitioner was engaging in a new venture where his future income was entirely uncertain." Petitioners' argument is without merit; it amounts to contending that respondent should have forgiven a portion of their debt outright without requiring them to give up potentially valuable tax

(continued...)

**[\*16]** would have been giving up collection of a substantial portion of petitioners' liability. There was no abuse of discretion in the AO's suggesting this tradeoff.

C. Future Income Collateral Agreement

In their petition, petitioners claim that the AO abused her discretion in refusing to entertain "any collateral agreements offered by the taxpayers". (Petitioners have offered no more specific description of the agreements to which they refer.) During the December 2, 2016, call Mr. Becker proposed a future income collateral agreement in lieu of increasing petitioners' $300,000 offer to $473,350 (i.e., their RCP as determined by the AO). The AO refused the proposal.

Respondent's motion for summary judgment contends that there was no abuse of discretion in the AO's refusal because petitioners failed to present any evidence to show that they expected a substantial increase in their future income. Petitioners' opposition to respondent's motion does not maintain this dispute, and we therefore deem them to have waived or conceded the issue.

In any event, the Commissioner generally considers future income collateral agreements "when the investigation reveals that a substantial increase in the taxpayer's future income is expected". IRM pt. 5.8.6.2.1 (July 31, 2014).

---

[10](...continued)
attributes in return.

[*17] Petitioners claimed during the CDP hearing that they had little or no income (other than the income from their partnerships) and no appreciable cashflow. The record does not indicate that petitioners ever claimed to expect an increase in their future income, and petitioners have not contended otherwise. It was therefore not an abuse of discretion for the AO to refuse to consider a future income collateral agreement.

D. Amount of Time Afforded to Petitioners

Petitioners do not dispute that their representative, Mr. Becker, understood on December 2, 2016, that petitioners' original OIC would not be accepted and that, if they wished to increase their offer to $473,350 and add a collateral agreement waiving NOLs and capital losses, the AO was amenable to those amended terms. The record also reflects (and petitioners have not disputed) that (1) the AO set December 7, 2016, as the deadline for a response and (2) the AO tried to contact petitioners' representative twice, once on December 8, 2016, and again on December 19, 2016. The parties agree that the AO had received no response before finally issuing the notice of determination on December 28, 2016. The petition contends that this sequence of events afforded petitioners inadequate time to respond with an amended offer and that the AO did not make clear that she

[*18] would close the case and issue a notice of determination if petitioners did not respond.

There was no abuse of discretion in the AO's decision to issue the notice of determination on December 28, 2016. The conversations between the AO and Mr. Becker that led up to and culminated in the December 2, 2016, call were sufficient to inform Mr. Becker that petitioners' $300,000 offer would not be accepted and that petitioners would be required to amend their OIC and add a collateral agreement. As of December 28, 2016, when the AO issued the notice of determination (25 days after their last call), petitioners' representative had missed a deadline to respond, had failed to respond to the AO's two attempts to reach him, and had failed otherwise to communicate with the AO. Under these circumstances the AO acted reasonably and in accordance with the regulations in closing the case and making a determination on the basis of the record as it was. See sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. ("Appeals will * * * issue a [n]otice of [d]etermination as expeditiously as possible under the circumstances.").[11]

---

[11]Petitioners complain that it took several years to negotiate a settlement with respect to their partnerships and then a year or two more to arrive at the December 2, 2016, call. Their implication would appear to be that because respondent allegedly took a long time before the call, they should have been given

(continued...)

**[\*19]** The petition asserts that petitioners' failure to respond was attributable to the alleged fact that Mr. Becker's office was flooded "a week or so before the Christmas/New Year's holiday". Petitioners also allege that this was communicated to the AO. Petitioners have not supported these allegations with an affidavit or declaration and therefore have failed to raise a genuine dispute of fact in this respect. Moreover, petitioners have not maintained this argument in their opposition to respondent's motion for summary judgment, and therefore we deem them to have waived or conceded this argument. In any event, even if we were to assume arguendo that Mr. Becker's office was flooded "a week or so" before Christmas, the December 7, 2016, deadline fell well before that time (as did the AO's December 8, 2016, attempt to reach Mr. Becker).

Additionally, petitioners allege (and have properly supported by declaration) that Mr. Becker did not inform them of the AO's suggestion that they amend their offer. Assuming the truth of this allegation for purposes of deciding

---

[11](...continued)
commensurate time after the call. This contention is without merit. The time taken to negotiate the settlement with respect to petitioners' deficiencies is irrelevant to whether the timing of the CDP hearing and determination was appropriate; and the appropriateness of the timing of one aspect of the CDP administrative proceeding does not necessarily depend on the timing of other aspects. The relevant question is whether the timing was appropriate to the issue at hand in the light of all the facts and circumstances. As we have explained, petitioners were given adequate time to respond.

**[*20]** respondent's motion for summary judgment, we conclude it provides no basis for relief.

In general, respondent's agents are not permitted to bypass a taxpayer's representative unless certain requirements are met (although respondent's agents may send certain notices, such as a notice of determination, directly to the taxpayer). See, e.g., IRM pt. 4.11.55.1.1 (Apr. 20, 2010). Consequently, the AO acted appropriately in communicating solely with Mr. Becker.

Mr. Becker had a duty to communicate promptly with his clients. See, e.g., 31 C.F.R. sec. 10.23 (2002) ("A practitioner may not unreasonably delay the prompt disposition of any matter before the Internal Revenue Service."). There was enough time between the December 2, 2016, call and issuance of the notice of determination (25 days) for Mr. Becker to communicate with petitioners and report back to the AO (even if his office was flooded at some point). The AO did not abuse her discretion in relying on Mr. Becker to communicate effectively with petitioners and to respond promptly after the December 2, 2016, call. Any dereliction of duty on Mr. Becker's part is irrelevant to the AO's determination, and any remedy petitioners might have for any such dereliction lies outside these proceedings.

[*21] For these reasons, we conclude that there was no abuse of discretion in the AO's decision to close the case and issue a notice of determination on December 28, 2016.

II. Petitioners' Closing Agreements and Section 6751(b)(1)

In general, if the taxpayer properly raises an issue as to whether the CDP officer verified, pursuant to section 6330(c)(1) and (3)(A), that the requirements of any applicable law or administrative procedure have been met, this Court will consider the verification issue without regard to whether the taxpayer raised the issue at the CDP hearing. Hoyle v. Commissioner, 131 T.C. 197 (2008), supplemented by 136 T.C. 463 (2011).

As noted, petitioners contend--in their opposition to respondent's motion for summary judgment and in their motion to remand--that the AO abused her discretion in failing to verify that there was written supervisory approval pursuant to section 6751(b)(1) of the initial determinations of the section 6662 penalties that were assessed against petitioners. In his response to petitioners' motion, respondent agrees that the AO did not verify compliance with section 6751(b)(1) but contends that valid closing agreements (attached as exhibits to his response) provided the basis for these penalty assessments so as to satisfy any requirement under section 6751(b)(1). In their reply, petitioners do not object to our

**[*22]** considering these closing agreements, nor do they dispute that the penalty assessments were made on the basis of these closing agreements.

Section 7121(b) provides that closing agreements:

shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact--

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or any determination * * * [or] assessment * * * made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

To the extent of matters agreed upon, closing agreements are final. E.g., Silverman v. Commissioner, 105 T.C. 157, 161 (1995), aff'd, 86 F.3d 260 (1st Cir. 1996).

Petitioners have not alleged or supported any fraud, malfeasance, or misrepresentation of material fact with respect to these closing agreements, and we deem petitioners to have waived or conceded any such argument. Consequently, respondent may not reopen those aspects of petitioners' case addressed in the closing agreements, and the closing agreements that petitioners signed may not be annulled, modified, set aside, or disregarded in this proceeding. The closing agreements at issue specifically provide that petitioners consent to assessment of

**[\*23]** the penalties in question. In signing these agreements, petitioners therefore agreed to waive the procedural requirement of section 6751(b)(1).

Consequently it is clear that if there was any error in the AO's failure to obtain verification of compliance with section 6751(b)(1), it was harmless error because neither respondent nor this Court may set aside petitioners' valid closing agreements or petitioners' consent to assessment contained therein. For this reason, no bona fide interest would be served by remanding for verification as to this issue. Cf. Nestor v. Commissioner, 118 T.C. 162, 167 (2002) (holding that no bona fide interest would be served in remanding a CDP case for the AO to verify assessment records where records that the Commissioner provided the taxpayer after the CDP hearing showed that the assessments were proper).

III. Petitioners' Motion To Remand

Petitioners have moved that the Court remand this case to respondent's Office of Appeals for four reasons. They claim that (1) the AO abused her discretion, (2) the AO failed to verify that the requirement of section 6751(b)(1) was met, (3) the parties were close to settlement when the notice of determination was issued, and (4) petitioners' circumstances have changed. We have already addressed the first two claims. The third claim is not a reason to remand in the absence of an abuse of discretion.

**[*24]** As to the fourth claim, in general we may remand a CDP case for materially changed circumstances if it would be helpful, necessary, or productive. See, e.g., Churchill v. Commissioner, T.C. Memo. 2011-182. Petitioners claim that their circumstances materially changed after the CDP hearing because (1) they have not earned any income since the CDP hearing and (2) they have generated substantial losses since the CDP hearing as a result of their decision to embark on a risky new business venture. (Petitioners' motion claims that this alleged business was "a new venture where * * * [Mr. McAvey's] future income was entirely uncertain.") But as explained, see supra note 6, the AO's calculation of petitioners' RCP did not include any income. Consequently, the situation with respect to petitioners' income does not appear to have materially changed since the CDP hearing. And if petitioners have spent assets in pursuit of some risky new business venture rather than paying their tax liabilities, respondent would be entitled on remand to include in their RCP any such assets as dissipated assets. Cf. Tucker v. Commissioner, T.C. Memo. 2011-67, 101 T.C.M. (CCH) 1307, 1314-1315 (2011), aff'd, 676 F.3d 1129 (D.C. Cir. 2012). Consequently, petitioners have not made even a prima facie showing that the events they claim have occurred since the CDP hearing would be likely to change the AO's determination. For these reasons, we conclude

[*25] that petitioners' request for a remand on the basis of changed circumstances is without merit.

Moreover, the AO issued the notice of determination after petitioners or their representative defaulted on their opportunity to respond with an amended OIC. In essence, petitioners seek a second chance to engage in negotiations that petitioners or their representatives allowed to lapse. There is no legal, equitable, or practical reason to remand this case to allow such a second chance. After carefully considering all the facts and circumstances of this case, we conclude that ordering a remand would be "tantamount to pressuring respondent and actively taking petitioners' side in the negotiations, a role we should not as a court and neutral arbitrator undertake." Kuretski v. Commissioner, T.C. Memo. 2012-262, at *12, aff'd, 755 F.3d 929 (D.C. Cir. 2014).[12]

For these reasons, petitioners' motion to remand will be denied.

IV. Conclusion

Our review of the record establishes that the AO properly discharged all of her responsibilities under section 6330(c). Finding no abuse of discretion in any respect, we will sustain the proposed collection actions.

---

[12]Petitioners may of course submit collection alternatives to respondent in the future, but any such activity would be beyond the scope of this CDP case.

**[*26]** To reflect the foregoing,

An appropriate order will be issued granting respondent's motion for summary judgment and denying petitioners' motion to remand, and decision will be entered for respondent.