T.C. Memo. 2017-235

UNITED STATES TAX COURT

PATRICK S. BERO AND JENNIFER M. BERO, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7873-14L.                    Filed November 27, 2017.

<u>Joseph Falcone</u>, for petitioners.

<u>Alissa L. VanderKooi</u>, <u>Robert D. Heitmeyer</u>, and <u>Rebecca M. Clark</u>, for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Pursuant to sections 6320(c) and 6330(d)(1),[1] petitioners

seek review of the determination of the Internal Revenue Service Office of Appeals

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

[*2] (Appeals) to sustain a notice of Federal tax lien (NFTL) filing and a proposed levy to collect petitioners' unpaid joint Federal income tax liabilities for taxable years 2008, 2009, 2010,[2] and 2011. The issues for decision are: (1) whether the settlement officer (SO) who conducted petitioners' collection due process (CDP) hearing abused her discretion in sustaining the NFTL filing and the proposed levy and (2) whether petitioners underwent a material change in circumstances between the CDP hearing and trial warranting a remand to Appeals for consideration of their changed circumstances.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and its exhibits are incorporated herein by this reference. Petitioners resided in Michigan when they filed their petition.

Respondent issued to each petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), proposing a levy to collect an aggregate of $55,648 in tax, penalties, and accrued interest for 2008,

---

[2]The parties agree that the 2010 liability was paid after respondent initiated these collection actions and is not at issue in this case.

[*3] 2009, and 2011.[3]  Petitioners timely requested a CDP hearing with respect to the levy notices.

Respondent also issued to petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice), advising them of the filing of a lien to secure the collection of income tax liabilities in the same amounts as specified in the levy notices (excluding penalties and accrued interest) for 2008, 2009, and 2011.[4]  Petitioners timely requested a CDP hearing with respect to the lien notice.

On January 14, 2014, as part of a CDP hearing covering both the lien and levy notices, petitioners' representative sent a letter to the SO proposing an installment agreement.  Under its terms, petitioners would pay $260 per month for three years starting in April 2014, $725 per month for three years starting in April 2017, and $1,018 per month starting in April 2020 until their outstanding tax liabilities were satisfied in full.  Petitioners claimed they proposed these stepped

---

[3]Petitioners' 2008 and 2009 liabilities arise from a stipulated decision entered in this Court sustaining deficiencies and penalties for those years, and the 2011 liability represents the unpaid tax reported as due on their 2011 Federal income tax return.  Petitioners do not dispute the underlying tax liabilities.

[4]The NFTL also listed an outstanding liability for 2010 which has been paid. See supra note 2.

**[*4]** increases because, once they had paid off a loan from a credit union, the credit union would lend them additional funds to pay off their outstanding tax liabilities.

On January 20, 2014, petitioners submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, to the SO which showed, after taking into account their monthly income and expenses, they had $1,545 left over each month to pay towards their outstanding tax liabilities. On the same day, petitioners' representative provided the SO with documentation[5] supporting their computations. The SO calculated that petitioners could pay $2,497 per month towards their outstanding tax liabilities after adjusting the Form 433-A as follows:

---

[5]Submitted documentation supporting petitioners' unsecured debt included: (1) JPMorgan Chase Bank statements showing monthly payments of $615 on a small business loan, (2) a Discover credit card payment history showing monthly payments of approximately $225, and (3) an ACS Education Services student loan payment history showing monthly payments of $304.

[*5]                                 Total living expenses

| Expense items | Actual monthly (taxpayer calculated) | Allowable (SO calculated) | Difference |
|---|---|---|---|
| Food, clothing, and misc. | $1,710 | $1,465 | ($245) |
| Housing and utilities | 2,796 | 2,796 | --- |
| Vehicle ownership costs | 737 | 737 | --- |
| Vehicle operating costs | 790 | 590 | (200) |
| Health insurance | 398 | 398 | --- |
| Out of pocket health care costs | 240 | 240 | --- |
| Life insurance | 507 | --- | (507) |
| Current year taxes (income/FICA) | 3,411 | 3,411 | --- |
| Secured debts | 600 | 600 | --- |
| Other expenses | 1,265 | 1,265 | --- |
| Total living expenses | 12,454 | 11,502 | (952) |
| Net difference/ability to pay (petitioners' total income of $13,999–total living expenses) | 1,545 | 2,497 | 952 |

In her ability-to-pay calculation, the SO accounted for the three items of unsecured debt that petitioners substantiated as follows. First, petitioners' Form 433-A claimed the $615 monthly payment on the JPMorgan Chase Bank loan as an expense of petitioner Patrick S. Bero's sole proprietorship in reaching the income figure for that business. The SO accepted that calculation. Second, the $225 monthly payment on the Discover credit card debt was accounted for in that the SO

**[\*6]** used the maximum amount allowable under the national standards for "Food, Clothing, and Misc.", the category under which credit card payments are taken into account. See Internal Revenue Manual (IRM) pt. 5.15.1.8(1) (Oct. 2, 2012). Third, petitioners' Form 433-A listed the $304 monthly payment on the student loan as an "Other expense" in reaching total monthly living expenses, and the SO accepted that figure.

The SO did not accept petitioners' proposed installment agreement, but instead offered two alternatives: (1) monthly payments of $2,500 (in accordance with her calculation of their ability to pay) or (2) an initial payment of $1,000 to bring their outstanding liabilities below $50,000, rendering them eligible for a "streamlined installment agreement"[6] requiring payments of only $700 per month. Petitioners rejected both alternatives and indicated that if their own proposed installment agreement was not accepted they wished to proceed to Tax Court.

---

[6]A "streamlined installment agreement" is designed to reduce taxpayer burdens by eliminating the requirement to submit a Form 433-A. Internal Revenue Manual (IRM) pt. 5.14.5.1 (Aug. 5, 2010). Such agreements were previously limited to taxpayers with unpaid balances of assessments (excluding accrued penalties and interest) not exceeding $25,000. See id. pt. 5.14.5.2(1) (Mar. 11, 2011). The SO proposed the "streamlined installment agreement" alternative on January 21, 2014. Interim guidance in effect at that time had raised the $25,000 ceiling to $50,000. I.R.S. Mem. SBSE-05-0313-021 (Mar. 1, 2013). The $50,000 ceiling was later reflected in a change to the IRM. See IRM pt. 5.14.5.2(1) (May 23, 2014).

**[\*7]**   On March 11, 2014, the SO issued notices of determination rejecting petitioners' proposed installment agreement and sustaining the NFTL filing and the proposed levy.  Each notice stated that during a February 10, 2014, call with petitioners' representative, "[t]he SO explained to the representative that his financials show he [Mr. Bero] can pay more and the agreement he wants will not pay within the collection statute expiration date".[7]  The notices also showed petitioners' "Minimum Monthly Payment Amount" as $2,497.

At trial neither party sought to supplement the administrative record, and petitioners expressly conceded that the administrative record which the parties had stipulated was accurate and sufficient for purposes of deciding whether the SO abused her discretion in rejecting petitioners' proposed installment agreement.  A trial was conducted for the purpose of receiving evidence with respect to petitioners' claim that a change in their circumstances between the issuance of the notices of determination and trial warranted a remand to Appeals for a supplemental determination.

Petitioners offered the testimony of Mr. Bero to the effect that a creditor had agreed shortly before trial to consolidate his outstanding nontax debts in a manner

---

[7]A document in the stipulated CDP administrative file suggests the collection period expiration date for the 2009 liability was August 27, 2022, and that full payment of that liability under petitioners' proposed installment agreement would not occur until October 28, 2022.

**[*8]** that would permit larger monthly payments (i.e., $750) on the outstanding tax liabilities for 48 months, followed by monthly payments of $1,000 for another 12 months, at which time the creditor would consolidate the remaining tax debt and advance funds for paying the Government in full. Petitioners offered no documentary evidence of this agreement.

OPINION

I. Statutory Framework

Section 6301 empowers the Secretary to collect the taxes imposed by the internal revenue laws. To further that objective, Congress has provided that the Secretary may effect the collection of taxes by, among other methods, liens and levies. See generally Living Care Alts. of Utica, Inc. v. United States, 411 F.3d 621, 624-625 (6th Cir. 2005). Section 6321 imposes a lien in favor of the United States on all property and rights to property of any person liable for taxes (taxpayer) after a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes. The lien arises at the time assessment is made and continues until the liability is satisfied or becomes unenforceable by lapse of time. Sec. 6322. The Secretary generally must file a lien notice with certain State or local authorities where a taxpayer's property is situated for the lien to be valid against certain categories of third parties. Sec. 6323(a), (f); Behling v.

[*9] Commissioner, 118 T.C. 572, 575 (2002).  Section 6331(a) authorizes the Secretary to levy upon all property or property rights of a taxpayer if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made.

When the Secretary pursues collection by lien or levy, he must notify the affected taxpayer in writing of his right to a CDP hearing with an impartial Appeals employee (Appeals officer).  See sec. 6320(a) and (b) (relating to liens); sec. 6330(a) and (b) (relating to levies).  At the hearing the taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection actions and possible collection alternatives such as an installment agreement.  Sec. 6330(c)(2)(A).  Additionally, the taxpayer may challenge the existence or amount of the underlying tax liability, but only if he did not receive a notice of deficiency with respect to, or otherwise have an opportunity to dispute, it.  See sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must issue a notice of determination concerning the proposed collection action.  See sec. 301.6320-1(b)(2), Q&A-B3, sec. 301.6330-1(e)(3), Q&A-E8(i), Proced. & Admin. Regs.  In making the determination the Appeals officer is required to take into consideration: (1) whether the requirements of applicable law and administrative procedure have been met; (2) any relevant issues raised by the taxpayer; and (3) whether the

**[\*10]** proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's legitimate concerns that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Pursuant to sections 6320(c) and 6330(d)(1), we have jurisdiction to review the Appeals officer's determination.  See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  To the extent that the validity of the underlying tax liability is properly at issue, the Court will review the determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  To the extent that the validity of the underlying tax liability is not properly at issue, the Court will review the determination for abuse of discretion.  Id. at 182.

An abuse of discretion occurs when the Appeals officer's determination is without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. at 308 (citing Freije v. Commissioner, 125 T.C. 14, 23 (2005)); Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Fowler v. Commissioner, T.C. Memo. 2004-163.  In reviewing for abuse of discretion, the Court does not make an independent evaluation of what would be an acceptable collection alternative.  See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); Murphy v. Commissioner, 125 T.C. at 320; Lipson v. Commissioner, T.C. Memo. 2012-252, at \*9.  If an Appeals officer follows all statutory and administrative guidelines and provides a

[*11] reasoned and balanced decision, the Court will not reweigh the equities. Thompson v. Commissioner, 140 T.C. at 179. As petitioners do not challenge their underlying tax liabilities, we will review the SO's determinations for abuse of discretion.

II.     Parties' Arguments

Respondent argues that the SO did not abuse her discretion in sustaining the NFTL filing and the proposed levy after rejecting petitioners' proposed installment agreement because their monthly ability to pay, even by their own calculation, was substantially greater than the amount offered in their proposed agreement. Petitioners counter that: (1) the notices of determination did not include a finding that petitioners' proposed installment agreement offered less than their ability to pay; (2) the SO erred in determining that petitioners' proposed installment agreement would fail to pay their outstanding tax liabilities before the limitations period expired; (3) the administrative record is insufficient for the Court to review the SO's calculations underlying such a determination; and (4) the refinancing of their nontax debts between the CDP hearing and trial constitutes a material change in circumstances warranting a remand to Appeals. With respect to petitioners' changed circumstances argument, respondent disagrees, arguing that any increased liquidity should not qualify them for remand.

**[*12]** A.    Ability To Pay

Section 6159(a) authorizes the Secretary to enter into an installment agreement, allowing the taxpayer to pay a tax liability over time, upon determining that the proposed installment agreement would facilitate full or partial collection of the liability.  See Thompson v. Commissioner, 140 T.C. at 179; sec. 301.6159-1(a), Proced. & Admin. Regs.  The Court gives due deference to the Secretary's determination because the Secretary has the discretion to accept or reject any proposed installment agreement.  Thompson v. Commissioner, 140 T.C. at 179; sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.

Petitioners argue that the notices of determination did not make a determination that their proposed installment agreement offered less than their ability to pay and did not reject the proposed agreement on that ground.  See SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943); Antioco v. Commissioner, T.C. Memo. 2013-35, at *24-*25.

We disagree.  Each notice referenced a telephone call the SO made to petitioners' representative in which she advised him that petitioners' financials showed they could pay more than they were offering.  Each notice also showed that the SO calculated petitioners' "Minimum Monthly Payment Amount" to be $2,497.  We are satisfied that one of the principal reasons the SO rejected

**[\*13]** petitioners' proposed installment agreement was its failure to offer monthly payments equal to their ability to pay and that she advised them of that reason.

This reason fully justified rejection of petitioners' proposed installment agreement. For such agreements, an Appeals officer may accept, at a minimum, a monthly payment equal to the taxpayer's ability to pay, equal to the excess of his monthly income over allowable expenses. Boulware v. Commissioner, T.C. Memo. 2014-80, at \*29; Friedman v. Commissioner, T.C. Memo. 2013-44, at \*9; IRM pt. 5.14.1.3(7) (Mar. 4, 2011). The SO was well within her discretion to reject petitioners' proposed installment agreement since their proposed initial monthly payments of $260 (for 36 months) did not equal or exceed their own calculation of their ability to pay, which was $1,545 per month.[8] The IRM

_____

[8]The SO made three downward adjustments to petitioners' allowable expenses, increasing their monthly ability to pay to $2,497. Her $245 reduction in the "Food, Clothing, and Misc." expense is in conformance with IRM pt. 5.15.1.7(3) (Oct. 2, 2012), which provides that taxpayers are allowed the monthly national standard amount for their family size regardless of actual expenses. Petitioners' claimed expense exceeded the then-current national standard amount for a four-person household. The SO's reasoning behind the two other adjustments is not clear from the record. She likely reduced petitioners' claimed "Vehicle Ownership Costs" by $200 because petitioners' figure exceeded the local standard for 2013, see id. pt. 5.15.1.7(4), and her elimination of their claimed "Life Insurance" expense of $507 presumably arose from a determination that it was a whole life rather than a term policy, see id. pt. 5.15.1.10(3). Petitioners have not taken issue with these adjustments. In any event, we need not consider them further, as the monthly payment petitioners offered in their proposed installment agreement fell so short of their own computation of their monthly ability to pay

(continued...)

[*14] provision applicable at the time the SO made her determination to reject petitioners' proposal stated: "Installment agreements <u>must</u> reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements." IRM pt. 5.14.1.4(4) (June 1, 2010) (emphasis added).[9] An Appeals officer properly exercises his discretion by adhering to IRM provisions governing acceptance of collection alternatives. See <u>Veneziano v. Commissioner</u>, T.C. Memo. 2011-160; <u>Etkin v. Commissioner</u>, T.C. Memo. 2005-245; <u>Schulman v. Commissioner</u>, T.C. Memo. 2002-129. The SO was not required to "haggle" with petitioners on the monthly payment amount after they rejected both of her alternative payment proposals. See <u>Boulware v. Commissioner</u>, at *31.

The Court does not recalculate a taxpayer's ability to pay nor substitute its judgment for that of the Appeals officer. <u>O'Donnell v. Commissioner</u>, T.C. Memo. 2013-247. However, the Court can consider whether the Appeals officer's decision to reject an installment agreement was the result of a failure to properly consider the taxpayer's financial information in the record. See <u>Gurule v.</u>

---

[8](...continued)
that the SO's adjustments are immaterial. Her rejection of petitioners' proposed agreement would be justified even if her adjustments were not taken into account.

[9]This provision was subsequently liberalized to state: "Generally Installment agreements should reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements." IRM pt. 5.14.1.4(4) (Sept. 19, 2014).

[*15] Commissioner, T.C. Memo. 2015-61.  In a pretrial memorandum and at trial, petitioners' counsel contended that the SO had not properly accounted for petitioners' unsecured debt, including their bank and credit card loans, in calculating their ability to pay.  Petitioners' posttrial briefs are silent regarding this argument, and we deem it abandoned.  See Rule 151(e)(4) and (5) (requiring that a party's brief state the points and arguments on which he relies); McLaine v. Commissioner, 138 T.C. 228, 243 (2012) (finding that the taxpayer abandoned his claim by failing to raise the issue on brief).

Even if the argument were not abandoned, it lacks merit as the SO's ability-to-pay calculation accounted for all three items of unsecured debt that petitioners substantiated.  The $615 monthly payment on the JPMorgan Chase Bank loan was claimed as an expense of Mr. Bero's sole proprietorship and accepted by the SO.  The $225 monthly payment on the Discover credit card debt was effectively accounted for as part of petitioners' "Food, Clothing, and Misc." expenses.[10]

_____

[10]Payments on credit card debt are classified in Publication 1854, How to Prepare a Collection Information Statement, and IRM pt. 5.15.1.8(1) (Oct. 2, 2012) as an expense that is included under the "Miscellaneous" category within the "Food, Clothing, and Misc." amount.  The "Food, Clothing, and Misc." allowable amount is based on national standards.  Deviation from this amount is allowed when a taxpayer provides documentation substantiating that the expenses are a necessary living expense.  Id. pt. 5.15.1.8(3).  While petitioners provided a payment history for their Discover credit card, they did not produce itemized statements proving necessary expenses beyond the standard amount.  IRM pt.

(continued...)

[*16] The $304 monthly payment on Mr. Bero's student loan was claimed on the Form 433-A in reaching total (monthly) living expenses, and that figure was accepted by the SO. The SO therefore properly accounted for all of petitioners' unsecured debt that was substantiated in the record in calculating their ability to pay.

B.    Collection Statute Expiration

We are satisfied that (1) the SO made a determination that the initial monthly payments offered in petitioners' proposed installment plan did not equal their ability to pay, (2) the SO advised petitioners of this determination, and (3) the determination was reasonable and was not an abuse of discretion. Because the foregoing is sufficient to sustain the rejection of petitioners' proposed installment agreement, we find it unnecessary to consider whether the SO correctly determined that their proposed installment agreement would not have resulted in the full payment of all liabilities before expiration of the period of limitations on collection.[11]  Even if petitioners' contentions were correct, it would not change the

---

[10](...continued)
5.15.1.8(3) also states that "[d]eviations from the standard amount are not allowed for miscellaneous expenses." The SO allowed the maximum amount under these standards, and therefore petitioners' credit card debt was accounted for in the ability-to-pay calculation.

[11]Although the Court must extrapolate somewhat, the administrative record
(continued...)

[*17] fact that their offer of $260 per month for the first 36 months fell far short of their ability to pay.

C.    Material Change in Circumstances

While the Court generally may not consider either (1) issues or arguments that a taxpayer does not raise as part of a CDP hearing or (2) information that the Appeals officer did not have at the time of a CDP hearing, see Giamelli v. Commissioner, 129 T.C. 107, 112-113 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002), a limited exception is made where there has been a material change in a taxpayer's circumstances between the time of the CDP hearing and trial that would justify a remand for reconsideration of his ability to pay, see Gurule v. Commissioner, T.C. Memo. 2015-61; Churchill v. Commissioner, T.C. Memo. 2011-182.  But see Kehoe v. Commissioner, T.C. Memo. 2013-63.

---

[11](...continued)
tends to support the SO's conclusion that the collections limitation period would have expired before full payment of petitioners' liabilities under their proposed installment agreement.  A document in the stipulated CDP administrative file suggests the expiration date for the 2009 liability was August 27, 2022, and that full payment of that liability under petitioners' proposed installment agreement would not occur until October 28, 2022.  As for petitioners' contention that the administrative record is insufficient for our review of the SO's calculations underlying such a conclusion, petitioners' counsel waived that argument at trial when he represented to the Court that the stipulated administrative record was sufficient for purposes of deciding whether the SO had abused her discretion in rejecting their proposed installment agreement.

[*18] Petitioners rely principally on <u>Gurule</u> and <u>Churchill</u> to support their claim that refinancing their nontax loans into a smaller monthly payment is a material change in circumstances.  In <u>Gurule</u> the Court granted a remand because of a material change in circumstances:  The taxpayers' son's death after issuance of the notice of determination caused them to have to borrow additional amounts from their section 401(k) plan account to pay for funeral expenses.  Similarly, in <u>Churchill</u> the Court granted a remand for a material change in circumstances where the taxpayer divorced between the CDP hearing and trial.  In each case the taxpayers suffered an <u>adverse</u> change in circumstances affecting their ability to pay.  <u>See</u> <u>Gurule v. Commissioner</u>, at *35-*36; <u>Churchill v. Commissioner</u>, T.C. Memo. 2011-182, slip op. at 13.  By contrast, in <u>Kehoe</u>, the Court rejected the taxpayer's request for remand on the ground of changed circumstances where, after issuance of the notice of determination, he became eligible to make penalty-free withdrawals from his IRA, thus improving his liquidity.  The Court reasoned that this improvement in financial circumstances would not have affected the Commissioner's decision to proceed with the NFTL filing.  <u>Kehoe v. Commissioner</u>, at *14-*16.

Petitioners claim that the newly arisen opportunity to refinance their nontax debt would increase their liquidity and enable them to make larger monthly

**[\*19]** payments of $750-$1,000 as part of a new installment agreement.  However, even putting aside their failure to substantiate the claimed refinancing opportunity, any such change would not constitute the kind of adverse change in circumstances that has been found to justify a remand to Appeals under our caselaw. Consequently, we conclude that a remand is not warranted.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.