T.C. Memo. 2019-46

UNITED STATES TAX COURT

TURNER ANSLEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 388-18L.                    Filed May 1, 2019.

Turner Ansley, pro se.

Christine A. Fukushima, for respondent.

MEMORANDUM OPINION

URDA, Judge:  In this collection due process (CDP) case Turner Ansley

seeks review pursuant to section 6330(d)(1)[1] of the determination of the Internal

---

[1]All section references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all dollar amounts to the nearest dollar.

**[\*2]** Revenue Service (IRS) Office of Appeals to uphold a notice of intent to levy. The principal question for decision is whether the IRS settlement officer abused her discretion in rejecting petitioner's $100 offer-in-compromise (OIC). Respondent has moved for summary judgment under Rule 121, contending that no disputed issues of material fact remain and that the settlement officer acted within her discretion. We agree and accordingly will grant the motion.

### Background

A.     Notice of Deficiency and IRS Collection Efforts

On August 4, 2015, the IRS sent petitioner by certified mail a notice of deficiency for his 2012 through 2014 tax years. The IRS determined Federal income tax deficiencies of $6,013 for his 2012 tax year, $6,665 for his 2013 tax year, and $6,517 for his 2014 tax year. The IRS also determined an accuracy-related penalty under section 6662(a) for each year. Petitioner did not seek this Court's review of the IRS' determination within 90 days, and the IRS accordingly assessed the tax liabilities in question. See secs. 6201, 6213(a).

To collect petitioner's 2012 through 2014 liabilities, the IRS issued a pair of notices on June 20, 2016--one relating to his 2012 liability and the other for his 2013 and 2014 liabilities--informing petitioner of its intent to levy and apprising him of his right to request a CDP hearing pursuant to section 6330(b)(1).

[*3] Petitioner filed a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing, on which he indicated his interest in submitting an OIC in lieu of the proposed levy. Petitioner did not challenge the underlying liabilities or identify any other issues.

B.    Initial CDP Proceedings

Petitioner's case thereafter was received by a settlement officer in the IRS Office of Appeals. On August 2, 2016, the settlement officer sent petitioner a letter scheduling a telephone CDP hearing for September 7, 2016. The settlement officer requested that petitioner submit a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, as well as his 2015 Federal income tax return, so that she could consider any alternative to collection that he wished to propose.

Petitioner neither supplied the requested information nor called the settlement officer on the appointed date. Given the lack of response, the settlement officer sent petitioner a form letter stating that she would decide the case based on the administrative file and any information previously provided.

While preparing her final determination, the settlement officer learned that the IRS Centralized Offer In Compromise (COIC) unit had received an OIC from petitioner on September 26, 2016. In response the settlement officer alerted the

**[\*4]** COIC unit and suspended the CDP proceeding so that the COIC unit could investigate petitioner's offer, consistent with the relevant procedures in the Internal Revenue Manual. See Internal Revenue Manual (IRM) pt. 5.8.4.15 (May 10, 2013), pt. 8.22.7.10.1.2 (Sept. 23, 2014).

C.      COIC Unit Investigation

   1.      Initial Reporting

The OIC that petitioner submitted to the COIC unit consisted of a Form 656, Offer in Compromise, and a Form 433-A. On the Form 656 petitioner offered $100 to settle his tax liabilities for 2012 through 2014 (the years at issue) as well as his tax liability for 2015. On the "Reason for Offer" section of the form petitioner checked the box marked "Doubt as to Collectibility". Petitioner did not check the box marked "Exceptional Circumstances" or offer any justification for not paying the full amounts of his underlying liabilities.

Petitioner supplied certain other bits of information on the Form 433-A. On the personal front petitioner disclosed that he was born in September 1939, was married, and rented his residence. Petitioner set forth only three personal assets--a 1990 Lexus, a 1997 Toyota, and a 1973 Buick--each of which he valued at zero. For his monthly income petitioner listed wages of $3,623 and reported no income from Social Security, pensions, or other sources.

**[*5]**    According to petitioner, his total monthly expenses were $4,503.  He reported $585 for food, clothing, and miscellaneous expenses, $1,382 for housing and utilities, $432 in vehicle operating costs, and $50 for out-of-pocket healthcare costs.  Petitioner further reported monthly taxes of $1,180 and a secured debt of $874.

On February 28, 2017, an offer examiner from the COIC unit called one of petitioner's representatives to obtain further information about his OIC and finances.  After a few months of back-and-forth (including a brief closing of the investigation), the offer examiner was able to obtain a clearer view of petitioner's financial picture.  She learned that petitioner's wife had filed for divorce and left the country.  The offer examiner also was told that petitioner's roster of cars had changed.  Petitioner's representative reported that he had given his Toyota to charity and disclosed his ownership of a previously unreported 2004 Honda, which was purportedly encumbered by a car loan (reported on the Form 433-A as a secured debt).  Despite repeated requests for loan documentation by the offer examiner, none was supplied.  Finally, the offer examiner was informed that petitioner had a practice of cashing checks and redepositing funds because of concerns about levies and overdrawing his account.

**[*6]** 2.     Financial Analysis

To evaluate petitioner's offer and his ability to pay the liabilities, the offer examiner performed a financial analysis of his assets, income, and expenses. She first determined that petitioner had assets worth $2,974. The offer examiner reached this conclusion by using the "quick sale" values of petitioner's three vehicles: (i) $1,564 for the 2004 Honda, (ii) $510 for the 1990 Lexus, and (iii) $400 for the 1973 Buick. She further concluded that petitioner's Toyota constituted dissipated assets of $500 because "the receipt provided for deed transfer was for a used car lot, not a charity."

The offer examiner next determined that petitioner had monthly income of $5,955. She derived this amount by adopting the monthly wage set forth on petitioner's Form 433-A ($3,623) and then adding his monthly Social Security income ($2,007) and an average of "other" unaccounted-for monthly income ($325). This "other" income was based on her analysis of petitioner's unaccounted-for bank account deposits.

The offer examiner finally concluded that petitioner had $3,818 in average monthly expenses. She reached this amount by accepting the expenses that petitioner reported on his Form 433-A for housing and utilities ($1,382) and current taxes ($1,180). Consistent with the national standards published by the

**[\*7]** IRS for 2017, she allowed food, clothing, and miscellaneous expenses of $639 and out-of-pocket healthcare expenditures of $117. She also increased petitioner's total monthly car expenses from $432 to $500. The offer examiner disallowed only one monthly expense--petitioner's secured debt (car loan), for which he had offered no substantiation.

On the basis of this analysis the offer examiner determined that petitioner had a monthly net income of $2,137 and that he could pay $256,440 over 120 months. The offer examiner also noted that petitioner had assets with a value of $2,974. Combining these figures, she determined a reasonable collection potential of $259,414.[2] The offer examiner further observed that petitioner could retire his total underlying liability ($32,300, including both tax and penalties) in approximately 16 months.

_____

[2]The Commissioner has promulgated guidelines for the evaluation of offers. See, e.g., Churchill v. Commissioner, T.C. Memo. 2011-182, 102 T.C.M. (CCH) 116, 117 (2011). The calculation of a taxpayer's reasonable collection potential occupies a central place in those guidelines. See id.; see also Internal Revenue Manual (IRM) pt. 5.8.5.1 (Sept. 23, 2008). A settlement officer derives the reasonable collection potential from her estimate of a taxpayer's assets and likely future income. See IRM pt. 5.8.5.4 (Sept. 30, 2013), pt. 5.8.5.20 (Sept. 30, 2013). Likely future income, in turn, is determined by multiplying a taxpayer's monthly disposable income (gross income minus necessary living expenses) by a certain number of months. See id. pt. 5.8.5.22 (Oct. 22, 2010), pt. 5.8.5.25 (Sept. 30, 2013).

**[\*8]**  On May 2, 2017, the offer examiner sent petitioner a letter preliminarily rejecting his OIC of $100 based on her financial analysis.  The letter explained, however, that the final decision to reject or accept rested with the Office of Appeals.

D.  Discussions With Settlement Officer and Notice of Determination

The settlement officer concurred in the offer examiner's financial analysis. Accordingly, on May 10, 2017, the settlement officer sent petitioner a letter in which she noted that rejection had been recommended.  She nonetheless offered him an installment agreement, which would have resulted in payments of $419 per month to his tax liabilities.[3]

Petitioner responded with several faxes during May.  These faxes included assorted IRS documents to which petitioner had added handwritten notes, inter alia, asking the settlement officer to "reconsider your negative decision" and referring to his overtime work.  Some of the faxes contained letters from lawyers (addressed generally to "Creditor") stating that petitioner was preparing to file for bankruptcy and should be afforded the benefits of fair debt collection laws.

---

[3]This letter was the second time the settlement officer had extended this offer.  She also had done so--to no avail--after the COIC unit had temporarily closed its investigation in March 2017.

[*9] Petitioner also faxed a copy of a newspaper article about the 2017 median income of Los Angeles County residents.

The settlement officer replied by letter on June 2, 2017. After noting that she had reviewed petitioner's correspondence, the settlement officer explained that the amount that the offer examiner had used for petitioner's wage income ($3,623) was less than both the monthly "low income" amount for Los Angeles ($4,208, according to the article petitioner submitted) and the monthly wage indicated by his work history from 2014 through 2016. On the latter point the settlement officer noted that, even during 2014, his lowest earning year, his monthly wage worked out to $4,664. The settlement officer concluded her letter by extending another opportunity for petitioner to enter into an installment agreement.

More faxes followed. As most pertinent here, on July 1, 2017, petitioner faxed a handwritten note in which he represented that he made a total of $51,043 per year based on wages of $25,043 and annual Social Security income of $26,000. In this note he again lamented the high cost of living in Los Angeles.

On July 18, 2017, the Office of Appeals issued a notice of determination sustaining the levy notice. The notice rejected petitioner's OIC of $100 "due to

**[\*10]** the reasonable collection potential of $259,414.00 with disposable income of $2,137.00 and equity in assets of $2,974.40."[4]

E.      Proceedings in This Court

Petitioner, who lived in California at the time, filed a timely petition on July 31, 2017.[5]  Respondent subsequently filed a motion for summary judgment to which petitioner responded.

Discussion

A.      Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520

---

[4]At one point in the notice of determination the settlement officer refers to the reasonable collection potential as "$253,465.60."  The reasonable collection potential determined by the offer examiner and adopted by the settlement officer, however, was $259,414.  Although this error concerns us, it appears from our review of the record to be an isolated mistake and not to have affected the substance of the settlement officer's analysis.

[5]Petitioner filed a petition in this Court before the issuance of the notice of determination, which we initially docketed as No. 12702-17.  We later dismissed that petition as premature and docketed the instant case on the basis of a petition filed on July 31, 2017.

**[\*11]** (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  Id.  However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

B.    Standard of Review

Pursuant to section 6330(d)(1), we have jurisdiction to review the Office of Appeals' determination.  See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  We review all other determinations for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.  In reviewing for abuse of discretion we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law.  See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

**[\*12]** C.    <u>Underlying Liability</u>

In his amended petition, petitioner asserts that the IRS made a "math mistake" that affected his 2008 through 2017 Federal tax liabilities.  Our jurisdiction in the instant proceeding, however, extends only to the review of the proposed levy for petitioner's 2012 through 2014 tax years.  Sec. 6330(d)(1); see also <u>Gallagher v. Commissioner</u>, T.C. Memo. 2018-77, at \*9-\*10.

Even for those years for which we have jurisdiction, we are precluded from considering petitioner's liability challenge.  A taxpayer may dispute his underlying tax liability in a CDP case only if he properly raised that issue at the CDP hearing.  See <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 113 (2007); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  Petitioner did not raise the issue in the Office of Appeals, and thus we cannot consider it now.[6]

---

[6]Petitioner attached to his summary judgment opposition what appears to be the first page of an undated IRS notice of deficiency addressed to "Turner Aansley [sic]."  Petitioner has added to this page handwritten notes to the effect that he "did not receive" it, and that his name was misspelled.  This exhibit relates to his underlying liability challenge, which, as explained above, lies outside our purview because it was not raised in the Office of Appeals.  Petitioner's failure on this count accordingly makes moot any argument that he did not receive a notice of deficiency in the first place.

**[\*13]** D.     Abuse of Discretion

We next consider whether the settlement officer:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3).

1.     Verification

As an initial matter, this Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing.  See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008), supplemented by 136 T.C. 463 (2011).  Petitioner did not contest verification in the Office of Appeals, nor does he allege in his petition that the settlement officer failed to satisfy this requirement.

Our examination of the record shows that the settlement officer satisfied her obligations in this regard.[7]  According to her case notes she confirmed that proper assessments had been made, and a notice properly sent, for 2012 through 2014.

---

[7]Respondent has conceded the sec. 6662(a) penalties based on the settlement officer's failure to properly verify that the supervisory approval requirements of sec. 6751 had been satisfied.

**[\*14]** She reviewed examination files and the notice of deficiency relating to these years as well as the certified mailing list showing the mailing of the notice and the United States Postal Service tracking results for it. Her case notes also reflect that she confirmed that a balance remained due when the CDP levy notice was issued. This thorough review plainly satisfies the verification requirement.

    2.    Collection Alternative

        a.    Legal Background

This brings us to the crux of the case: the settlement officer's rejection of petitioner's OIC of $100.[8] Section 7122(a) authorizes the IRS to compromise an outstanding tax liability on grounds that include doubt as to collectibility, the ground that petitioner urged. See sec. 301.7122-1(b)(2), Proced. & Admin. Regs. The Secretary may compromise a tax liability on this basis where the taxpayer's assets and income render full collection unlikely. Id. Conversely, the IRS may reject an OIC when the taxpayer's reasonable collection potential exceeds the amount he proposes to pay. See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Generally, settlement officers are directed to reject any offer substantially below the taxpayer's reasonable collection

---

[8]We have jurisdiction to review a settlement officer's rejection of an OIC that encompasses liabilities for both CDP years and non-CDP years. Gallagher v. Commissioner, T.C. Memo. 2018-77, at \*10 n.5.

[*15] potential unless special circumstances justify acceptance of such an offer. See Mack v. Commissioner, T.C. Memo. 2018-54, at *10; Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

In reviewing the settlement officer's determination we do not make an independent evaluation of what would be an acceptable collection alternative. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); Murphy v. Commissioner, 125 T.C. at 320; see also Randall v. Commissioner, T.C. Memo. 2018-123, at *9 ("We * * * do not recalculate a different amount for an acceptable installment agreement or OIC."). Rather, our review is limited to determining whether the settlement officer abused her discretion--that is, whether her decision to reject petitioner's offer was arbitrary, capricious, or without sound basis in fact or law. Thompson v. Commissioner, 140 T.C. at 179; Murphy v. Commissioner, 125 T.C. at 320.

b.    Analysis of OIC

The settlement officer's decision to reject petitioner's $100 OIC was not an abuse of discretion in light of the financial analysis of petitioner's assets, income, and expenses showing that he had assets on hand of $2,974 and monthly net income of $2,137. Petitioner does not quibble with the asset valuation, which by itself likely would supply sufficient grounds for rejecting petitioner's $100 offer.

**[*16]** Instead, at various points in the Office of Appeals and before this Court, petitioner has trained his fire on the calculation of his monthly income and allowable expenses. We find no fault as to either.

Turning first to the income calculation, petitioner has not contested the determinations that he had monthly Social Security income of $2,007 and "other" income of $325--two revenue streams he left off his Form 433-A. Instead, he challenges the settlement officer's determination that he earned $3,623 in monthly wages, contending that he earned $2,087 a month ($25,043 annually). The figure used by the IRS, however, comes directly from the monthly wage income petitioner reported on his Form 433-A. Petitioner has offered no reason or support for the change.[9]

The determination of petitioner's monthly expenses was similarly sound. Pursuant to Congress' directive, the IRS has published "national and local allowances" to ensure that taxpayers entering into collection alternatives have adequate means to provide for basic living expenses. Sec. 7122(d)(1), (2)(A). This Court has upheld the IRS' use of such standards to determine basic living

_____

[9]Even crediting petitioner's unsupported assertion that his total annual income (counting wages and Social Security income) was $51,043 produces a net monthly income of more than $400 to dedicate to retiring his tax liability (assuming monthly expenses of $3,818, the amount the IRS allowed).

[*17] expenses when evaluating proposed collection alternatives. See Speltz v. Commissioner, 124 T.C. 165, 179 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006). For "Housing and Utilities" and "Transportation", a taxpayer is allowed the lesser of the applicable local standards or the amounts that he actually paid monthly for expenses. See IRM pt. 5.15.1.7(4) (Oct. 2, 2012), pt. 5.15.1.9 (Nov. 17, 2014). For "Food, Clothing and Other Items" and "Out-of-Pocket Health Care Expenses", a settlement officer is to allow the national standard amounts "without questioning the amounts * * * [the taxpayer] actually spend[s]." IRM pt. 5.15.1.7(3) (Oct. 2, 2012).

The settlement officer did not abuse her discretion in determining monthly allowable expenses of $3,818. The financial analysis (adopted by the settlement officer) generally accepted the amounts petitioner had reported on his Form 433-A. Consistent with the IRM, the analysis allowed the national standard amounts for food, clothing, and miscellaneous expenses and for out-of-pocket healthcare expenses, which were greater than the amounts petitioner had reported. It also permitted greater total automobile expenses than petitioner had reported. The analysis disallowed only one expense--the secured debt (car loan) for which petitioner supplied no documentation, despite being given multiple opportunities to do so.

[*18] Rather than attacking any of the specifics of the analysis, petitioner instead suggests that the allowances were insufficient because of the high cost of L.A. living. Deviations from the national and local allowances set by the IRS, however, are permitted only upon a showing that the standard amounts are "inadequate to provide for a specific taxpayer's basic living expenses". See IRM pt. 5.15.1.7(5) (Oct. 2, 2012). The taxpayer bears the burden of providing sufficient information to justify a deviation from local standards. See, e.g., Thomas v. Commissioner, T.C. Memo. 2015-182, at *27. Petitioner fails to point to any specific facts indicating that these amounts were inadequate to provide for his basic living expenses.

We consequently find no abuse of discretion in the settlement officer's rejection of petitioner's $100 offer-in-compromise given the well-reasoned analysis showing "disposable income in the amount of $2,137 [per month] and equity in assets in the amount of $2,974.40."[10]

---

[10]We are skeptical about one aspect of the reasonable collection potential determination: the reasonableness of using a 10-year window for determining future income for petitioner, who was 77 years old at the time. See IRM pt. 5.8.5.25 (Sept. 30, 2013), pt. 5.8.11.2.1(5) (Aug. 8, 2015) ("In addition to the basic living expenses, other factors to consider that impact upon the taxpayer's financial condition include * * * [t]he taxpayer's age[.]"). Nonetheless, any error in this regard is harmless given the significant difference between petitioner's OIC ($100) and his ability to pay ($2,137 in monthly net income, plus assets worth

(continued...)

[*19] 3.    Balancing Analysis

Petitioner did not allege in his petition or argue at any later point that the settlement officer failed to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C).  He thus has conceded this issue.  See Rules 121(d), 331(b)(4). In any event the settlement officer expressly concluded in the notice of determination that the proposed levy action balanced the need for efficient tax collection with petitioner's legitimate concerns about intrusiveness "[s]ince no alternative could be reached".

E.    Conclusion

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the IRS' determination to sustain the notice of intent to levy.  To reflect the foregoing,

An appropriate order and decision

will be entered.

---

[10](...continued)
$2,974).  And, of course, petitioner is free to submit another OIC if his circumstances legitimately warrant it.  See sec. 6330(d)(3)(B).