# United States Tax Court

T.C. Memo. 2025-69

CHAD T. MACKLAND AND TINA M. MACKLAND,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 9583-24L.                                    Filed July 1, 2025.

————

Chad T. Mackland and Tina M. Mackland, pro se.

*Rae L. Ensor* and *Joline M. Wang*, for respondent.

## MEMORANDUM OPINION

JENKINS, *Judge*: In this collection due process (CDP) case, petitioners, Chad T. Mackland and Tina M. Mackland, timely filed a Petition under section 6330(d)(1),[1] challenging a Notice of Determination Concerning Collection Actions Under IRS Sections 6320 or 6330 of the Internal Revenue Code (NOD) issued by the Internal Revenue Service (IRS) Independent Office of Appeals (Appeals). The NOD sustains a proposed levy aimed at collecting unpaid assessments related to petitioners' 2017 and 2018 tax years and rejects their proposed collection alternative. The NOD was issued to petitioners following a CDP hearing and extended back-and-forth with Appeals.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[*2] Respondent filed a Motion for Summary Judgment (Motion) pursuant to Rule 121, contending that it was not an abuse of discretion for Appeals to reject petitioners' proposed collection alternative and sustain the levy. Petitioners did not file a response.[2] This Court finds that this case is appropriate for summary adjudication and that Appeals did not abuse its discretion in rejecting petitioners' proposed collection alternative and sustaining the levy. This Court will thus grant the Motion.

*Background*

The following facts are based on the parties' pleadings and Motion papers, including the Exhibits attached thereto, as well as the administrative record. *See* Rule 93. The facts are stated solely for the purpose of ruling on the Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Petitioners resided in Iowa when the Petition was filed.

I.    *Underlying Liabilities*

Petitioners timely filed their federal income tax return for the 2017 tax year, reporting an income tax liability of $63,860, tax withholding of $1,863, and a credit of $723. Petitioners did not remit any payment with their tax return. The IRS processed petitioners' 2017 tax return on November 19, 2018, and in addition to petitioners' reported income tax liability, the IRS assessed additions to tax for failure to timely pay and for failure to make estimated tax payments, as well as statutory interest.

Petitioners also timely filed their federal income tax return for the 2018 tax year, reporting an income tax liability of $13,088 and tax withholding of $12,069. Petitioners did not remit any payment with their tax return. The IRS processed petitioners' 2018 tax return on November 18, 2019, and the IRS assessed an addition to tax for failure

---

[2] Petitioners waited until the day after the original deadline for their response to mail a request for an extension of the deadline, indicating that they needed additional time to retain counsel. They then requested an extension of the first extended deadline on the grounds that "[o]btaining representation is in the final stages." Petitioners subsequently requested an extension of their second extended deadline for a response, but, to this date, petitioners have not retained counsel. All in all, this Court gave petitioners more than three months from the date of the Motion to file a response, and the Court notes that petitioners' pattern of delay before this Court is consistent with their pattern of delay before Appeals.

[*3] to timely pay, as well as statutory interest, in addition to their reported income tax liability. On November 2, 2020, the IRS issued to petitioners Notice CP2000, which reflected an income tax deficiency of $14,951, a substantial understatement of income tax penalty of $2,990 under section 6662(a) and (b)(2), and statutory interest of $1,081 for the 2018 tax year. On February 22, 2021, the IRS issued Notice CP3219A, Notice of Deficiency, to petitioners, for the 2018 tax year, determining an income tax deficiency as well as a substantial understatement of income tax penalty and notifying petitioners of their right to challenge the determination in this Court. Petitioners did not file a timely petition with this Court disputing the Notice of Deficiency. On November 15, 2021, the IRS assessed against petitioners an additional income tax liability of $834 for the 2018 tax year instead of the larger amount reflected in the Notice of Deficiency. The IRS did not assess the substantial understatement penalty reflected in the Notice of Deficiency.[3]

## II.    *Final Notice and Request for CDP Hearing*

On June 27, 2023, the IRS issued to petitioners a Final Notice of Intent to Levy and Notice of Your Rights to a Hearing (Levy Notice), notifying them of a proposed levy to satisfy their unpaid income tax liabilities for the 2017 and 2018 tax years. In response, petitioners' representative submitted to the IRS a package dated July 25, 2023, that contains a cover letter and a timely Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153, under "Reason you are requesting a hearing," petitioners checked the box for "I am unable to pay in full and would like a collection alternative," as well as the box for "Other issue(s) and/or comment(s)," next to which they entered "PLEASE SEE COVER LETTER." Under "Proposed collection alternative," they checked the box for "Installment Agreement," as well as the box for "Other," referring back to the package's cover letter for the requested explanation. Petitioners' representative explained in the cover letter that petitioners were still recovering from past legal issues, Mr. Mackland was unemployed, and Mrs. Mackland had a serious illness. The cover letter asserts that under these circumstances, "[e]nforced collection action would be an insidious remedy to employ." Petitioners' representative also requested in the letter that petitioners

---

[3] Respondent does not provide an explanation for the assessed amount, but petitioners have not challenged the deficiency, and this Court need not address the underlying amounts to make a determination with respect to the CDP proceeding and the NOD at issue before this Court.

[*4] be allowed "time to explore means to obtain equity from their home to pay down the debt" and notes that a federal tax lien placed on the home by the IRS complicates the loan process. Petitioners did not dispute the underlying tax liabilities for the 2017 and 2018 tax years in the cover letter or on the Form 12153.

As part of the request for a CDP hearing, petitioners submitted to the IRS a Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, dated July 20, 2023. On the Form 433–A, petitioners indicated that only Mrs. Mackland was employed and that monthly living expenses exceeded monthly income. Under personal assets, petitioners listed two checking accounts showing minimal account balances, one investment account with a positive current value, two personal vehicles, and petitioners' primary residence in which, petitioners reported, they had significant equity. Petitioners also enclosed some supporting documentation with the Form 433–A, including checking account statements showing payroll deposits for March through June 2023; vehicle, mortgage, and medical expense statements; and copies of certain past due notices. Despite listing an investment account on the Form 433–A, petitioners did not provide statements or detailed financial information related to the investment account.

III. *CDP Hearing and Interactions Between IRS and Petitioners*

A Revenue Officer (RO) reviewing petitioners' CDP hearing request concluded that "[t]axpayer [is] requesting [currently not collectible] alternative." Petitioners' request for a CDP hearing was assigned to an Appeals officer (AO), who verified that she had no prior involvement with petitioners for the types of taxes and the tax years involved in the case, confirmed that petitioners were in compliance with their federal income tax filing obligations, and conducted her initial analysis of the case. On August 9, 2023, the AO sent petitioners a letter (Initial Letter) acknowledging receipt of the CDP hearing request and scheduling a telephone CDP hearing for September 6, 2023. The Initial Letter explains that, in order for a collection alternative to be considered, petitioners must provide a current copy of the investment account statement, current vehicle statements, and current paystubs for at least the past two months. The letter also requests copies of past due notices and any other evidence that a hardship exists. The letter notifies petitioners that if they do not participate in the scheduled telephone hearing or otherwise respond to the letter, Appeals will make a

[*5] determination based on the information petitioners previously provided and any information on file regarding the applicable tax years.

At the request of petitioners' representative, the AO agreed to reschedule the telephone hearing to September 22, 2023. On the morning of September 22, 2023, the representative notified the AO, by fax, that petitioners intended to resolve the CDP case by taking out a loan against their home. Enclosed with the fax were emails from two banks indicating that petitioners had started the application process with one bank on September 14, 2023, and with a second bank on September 15, 2023. The representative also enclosed a second copy of the Form 433–A, dated July 20, 2023, enclosing the same supporting financial documents provided earlier, and notified the AO that the same information had been previously provided to the RO. No additional or updated financial information requested in the Initial Letter was provided to the AO. Later in the day, the AO and the representative participated in the scheduled telephone hearing, during which the AO explained that the equity in the primary residence "must be addressed prior to a collection alternative being granted" and that copies of any loan applications should be provided for her to verify the loan application process was moving forward. The AO agreed to allow petitioners more time to continue the loan application process and to contact the representative in 30 days for a status update.

On October 23, 2023, the representative submitted copies of email communications between Mr. Mackland and his bankers indicating that petitioners' loan applications were in underwriting and awaiting appraisals. Copies of the loan applications were not provided. Appeals again agreed to give petitioners additional time. On October 26, November 10, and December 12, 2023, and January 5, 2024, the representative submitted additional faxes to the AO with updates from Mr. Mackland of varying degrees of specificity about petitioners' 2022 federal income tax return, Mrs. Mackland's health challenges, and the status of the loan application process; however, petitioners did not provide copies of any loan applications.

During the months between September 2023 and January 2024, the AO did not make a determination with respect to the CDP case and also forestalled levy action with respect to petitioners, in part because she understood Mrs. Mackland to be under treatment for a serious illness. However, on February 7, 2024, the AO advised petitioners' representative that if petitioners were unable to refinance their home or otherwise secure access to their equity in it, she would be unable to grant

[*6] a collection alternative because of the equity in petitioners' assets. On February 14, 2024, the representative submitted to the AO a fax enclosing email communications between himself and Mr. Mackland, in which Mr. Mackland indicated an anticipated closing date of March 4, 2024, for a home equity loan. A copy of the loan application was not provided. On February 15, 2024, the AO contacted the representative by phone to discuss the status of the loan application. The representative indicated that he would forward petitioners' loan application to the AO once received. He also requested a total payoff amount calculated to March 4, 2024, the anticipated closing date of the loan, which the AO generated on February 15, 2024, and provided to petitioners and the representative.

On March 7, 2024, the representative submitted a fax to the AO indicating that petitioners planned to work with a third bank to secure the equity, that there were no signed documents for the loan available until closing, and that there was no set date for closing. On March 11, 2024, the AO left the representative a voicemail requesting clarification regarding the status of the loan given petitioners' prior representations.

The AO's Case Activity Record indicates that on March 13, 2024, she analyzed the case further and confirmed that petitioners' monthly living expenses exceeded monthly income. The AO's notes include a currently not collectible (CNC) code, potentially suggesting that the AO believed that collection of the liability would create a hardship for petitioners. The notes also include an excerpt from Internal Revenue Manual (IRM) 5.11.1.3.1(2) (Nov. 24, 2021) regarding prelevy considerations, stating:

> [L]evy determinations are made on a case-by-case basis and revenue officers must exercise good judgment in making the determination to levy. When determining if a levy is appropriate consider the following:
>
> - Anything that the revenue officer knows about the taxpayer's financial condition including economic hardship. If the revenue officer has sufficient information and verified that the levy would cause an economic hardship, the levy should not be issued. While information in the IRS's records may be sufficient to corroborate the presence of economic hardship, in some cases the taxpayer may need to

[*7]          provide additional information in order to make that determination.

The AO's notes conclude that "[i]f no signed loan application is received in the next 30 days . . . AO is going to issue NOD."

On March 14, 2024, the representative submitted a fax to the AO indicating that because of recent hospitalizations and health challenges faced by both Mrs. Mackland and an immediate family member cosigning the loan, the closing date had been postponed until April 1, 2024. On April 15, 2024, the AO had a call with the representative in which she noted that aside from early email communications with petitioners' bankers, petitioners had not provided any solid evidence that they were moving forward with the loan process. The AO indicated that she could wait only a few more weeks for information to be provided. Despite receiving numerous faxes during the duration of her review, the AO did not receive any documentation requested in the Initial Letter, nor any loan-related documents. On May 13, 2024, having received no additional information from petitioners or the representative, Appeals issued the NOD.

IV.    *NOD*

The NOD explains that all legal and procedural requirements were followed in the issuance of the Levy Notice and reflects the determination to sustain the proposed levy. The attachment enclosed with the NOD (Attachment) explains that the AO had no prior involvement with respect to the specific tax periods and that the AO verified that the requirements of any applicable law or administrative procedure were met. Specifically, IRS records confirm the proper issuance of the notice and demand, notice of intent to levy, and notice of a right to a CDP hearing. The Attachment also concludes that an assessment was properly made for each tax and period to which the Levy Notice relates, that notice and demand for payment was mailed to petitioners' last known address, and that there was a balance due when the Levy Notice was issued.

The Attachment notes that petitioners did not raise a challenge to their underlying liabilities. It also notes that petitioners have equity in assets that must be addressed before a collection alternative can be established. It explains the background of the case, detailing the interactions between the AO and petitioners, as well as petitioners' failure to provide sufficient documentation to demonstrate that they

**[\*8]** were moving forward with the home loan process. The Attachment further explains that the AO reviewed the information on file, including the information petitioners provided, which the administrative record shows included the Form 433–A and supporting documentation, and concluded that the actions taken or proposed were appropriate under the circumstances.

With regard to the requested collection alternative, the Attachment explains: "In the 7 months since the date your hearing was held you did not provide sufficient documentation to confirm you were in the process of liquidating your assets. Since the equity in assets was not addressed, an installment agreement could not be established." Finally, the Attachment concludes:

> Internal Revenue Code § 6330 requires the Appeals Officer to consider whether any collection action balances the need for efficient collection of the unpaid taxes with the legitimate concern that such action be no more intrusive than necessary. Appeals determined the proposed levy did balance the need for efficient tax collection. You have equity in assets that needs to be address[ed] prior to a collection alternative of an installment agreement being established.

*Discussion*

I.    *Summary Judgment Standard*

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Either party may move for summary judgment regarding all or any part of the legal issues in controversy. Rule 121(a)(1). In the U.S. Court of Appeals for the Eighth Circuit, to which an appeal of this case would presumptively lie, *see* § 7482(b)(1)(G)(i), review of CDP determinations for abuse of discretion is limited to the administrative record, *see Robinette v. Commissioner*, 439 F.3d 455, 461–62 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). In cases in which judicial review is based solely on the administrative record, a motion for summary judgment and any response in opposition to a motion for summary judgment must include a statement of facts with references to the administrative record. Rule 121(j). In deciding whether to grant summary judgment, the Court considers factual materials and inferences drawn from them in the light most favorable to the

[*9] nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. The nonmoving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In the Motion, respondent argues that there was no abuse of discretion because Appeals fully complied with the requirements of section 6330(c)(3). Accordingly, respondent argues, summary adjudication is appropriate. Petitioners have not argued that the administrative record is incomplete or should be supplemented, nor have they filed a motion to complete or supplement the administrative record pursuant to Rule 93(b). This Court finds, on the basis of the record before it, that this case is appropriate for summary adjudication.

II.    *Standard for Review*

If the underlying tax liability is not at issue, the Court reviews Appeals' determination for abuse of discretion. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 182 (2000). In reviewing for abuse of discretion, the Court does not conduct an independent review of the collection alternatives and does not substitute its judgment for that of Appeals; rather, the Court's review is limited to determining whether Appeals' decision was arbitrary, capricious, or without sound basis in fact or law. *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). If the underlying tax liability was properly at issue in the CDP hearing, the Court reviews the determination de novo. *Lunsford v. Commissioner*, 117 T.C. 183, 185 (2001) (citing *Goza*, 114 T.C. at 181–82).

In a CDP hearing, a taxpayer may raise challenges to the existence or amount of an underlying liability only if the taxpayer did not receive a statutory Notice of Deficiency for the tax liability or did not otherwise have an opportunity to dispute it. *See* § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e)(1). These challenges may include challenges to the liability the taxpayer reported on a return. Treas. Reg. § 301.6330-1(e)(1). The term "underlying liability" includes any tax deficiency, additions to tax or penalties, and statutory interest. *See Montgomery v. Commissioner*, 122 T.C. 1, 7–8 (2004); *Katz v. Commissioner*, 115 T.C. 329, 338–39 (2000). An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after assessment of the liability unless the

[*10] opportunity was offered before the assessment of a tax subject to deficiency procedures. *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E2; *see also Lewis v. Commissioner*, 128 T.C. 48, 61–62 (2007).

To preserve an underlying tax liability challenge, a taxpayer must properly raise that challenge during the CDP hearing. *See Thompson v. Commissioner*, 140 T.C. 173, 178 (2013); *Giamelli v. Commissioner*, 129 T.C. 107, 113–14 (2007). "An issue is not properly raised if the taxpayer fails . . . to present to Appeals any evidence with respect to that issue after being given a reasonable opportunity to [do so]." Treas. Reg. § 301.6330-1(f)(2), Q&A-F3; *see Giamelli*, 129 T.C. at 112–16. As discussed *supra* Background Part I, for the 2017 tax year, the IRS assessed the income tax liability petitioners reported, additions to tax for failure to timely pay and for failure to make estimated tax payments, and statutory interest. For the 2018 tax year, the IRS assessed the income tax liability petitioners reported, additions to tax for failure to timely pay, and statutory interest. The IRS also issued a Notice of Deficiency to petitioners for the 2018 tax year. Petitioners failed to timely petition this Court to dispute the Notice of Deficiency, and the IRS ultimately assessed against petitioners an additional income tax liability of $834. Petitioners did not dispute the underlying liability for the 2017 or 2018 tax year in their Form 12153 or in the Petition. Accordingly, this Court reviews Appeals' determination for abuse of discretion. *See Sego*, 114 T.C. at 610; *Goza*, 114 T.C. at 182.

In conducting this review, this Court looks to the reasons offered in the NOD, as supplemented by other documents in the record, such as Appeals' case activity notes. *See Serna v. Commissioner*, T.C. Memo. 2022-66, at *8; *see also Kasper v. Commissioner*, 150 T.C. 8, 24–25 (2018) ("Although we may not accept any *post hoc* rationalizations for agency action provided by the Commissioner's counsel, we may consider any 'contemporaneous explanation of the agency decision' contained in the record." (quoting *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001))).

III.    *Evaluation of Appeals' Determination*

This Court considers whether Appeals (1) properly verified that the requirements of any applicable law or administrative procedure were met; (2) considered any relevant issues petitioners raised; and (3) considered whether the proposed collection actions balance the need for the efficient collection of taxes with the legitimate concern of

**[\*11]** petitioners that any collection action be no more intrusive than necessary. *See* § 6330(c).

### A. *Verification*

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. *See Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011). This Court concludes, from a review of the administrative record, that Appeals conducted a thorough review of the record and verified that all applicable requirements were met. Accordingly, this Court concludes that there was no abuse of discretion with regard to the verification requirement.

### B. *Issues Petitioners Raised*

A taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy" at a CDP hearing, including challenges to the appropriateness of collection actions and requests for collection alternatives. *See* § 6330(c)(2)(A). As discussed *supra* Discussion Part II, petitioners did not dispute their underlying liabilities on Form 12153 or in the Petition. On the Form 12153, petitioners indicated that they were requesting a CDP hearing because they were "unable to pay in full and would like a collection alternative," which the RO apparently interpreted as a request for CNC status. However, petitioners did not claim economic hardship or that they would need to retain the equity in their home to meet reasonable basic living expenses. Rather, on the Form 12153 and the accompanying cover letter, petitioners specifically requested an installment agreement and additional time to access the equity in their home to satisfy their tax liabilities, the process for which they indicated was complicated by the filing of a federal tax lien.

In the Petition, petitioners allege that Appeals abused its discretion by denying an installment agreement and determining that the IRS has no other effective means of collecting the tax than to levy. They disagree with the determination in the NOD that the levy action, despite its intrusiveness, is necessary for the collection of tax. Petitioners argue that the IRS abused its discretion in determining that it has no other effective means of collecting the tax than to levy, "because it will effectively render the Petitioners and their family homeless." The Petition further argues that an installment agreement is the most viable alternative to allow petitioners to remain in their home while allowing the IRS to collect all the taxes due. Finally, the Petition asks this Court

**[\*12]** to remand the case to Appeals with direction to grant petitioners' request for an installment agreement.

Section 6159(a) authorizes the IRS to enter into a written agreement allowing a taxpayer to pay a tax liability in installments if it concludes that the agreement "will facilitate full or partial collection of such liability." The decision to accept or reject an installment agreement lies within the Commissioner's discretion. *See Thompson*, 140 T.C. at 179.[4] Consistent with the statutory predicate in section 6159(a) for an installment agreement that it "facilitate" collection, the IRM indicates that installment agreements should generally not be allowed in lieu of full or partial payment if taxpayers have the means to pay from income or equity in assets. *See* IRM 5.14.1.2(1) (Mar. 31, 2023); *see also* IRM 8.22.4.2.1(4) (May 12, 2022) (referring to IRM 5.14 for consideration of installment agreements in a CDP hearing).[5] In analyzing a taxpayer's financial condition, the IRS considers, among other things, equity in encumbered assets. *See* IRM 5.15.1.3(2)(d) (Aug. 29, 2018). If a taxpayer has equity in assets, including equity in real property, that could be used to fully or substantially satisfy a liability, the IRS is to explore with the taxpayer the possibility of liquidating or borrowing against those assets, unless it would impose economic hardship. *See* IRM 5.14.1.4(5) (Mar. 31, 2023).

Economic hardship exists when, considering a taxpayer's unique circumstances, the taxpayer is unable to pay reasonable basic living expenses. Treas. Reg. § 301.6343-1(b)(4); IRM 5.15.1.2(16) (Nov. 22, 2021). To determine whether economic hardship exists, the IRS will consider any information provided in good faith by a taxpayer, including medical expenses, extraordinary circumstances, and any other factors that the taxpayer may raise. *See* Treas. Reg. § 301.6343-1(b)(4). If the IRS's analysis of a taxpayer's financial condition shows that the taxpayer cannot pay, the IRS may consider CNC status. IRM 5.14.1.4(7) and (8). Although the AO's notes include a CNC code suggesting that collection of the liability would create a hardship for petitioners, the AO apparently determined, in requiring petitioners to borrow against the equity in their house, that the economic hardship exception did not apply.

---

[4] Petitioners did not meet the requirements of section 6159(c) so as to require the IRS to enter into a full payment installment agreement.

[5] Citations herein are to provisions of the IRM as in effect during the relevant portion of Appeals' consideration of Petitioners' case.

[*13] The record shows that Appeals considered petitioners' unique circumstances, including their financial health and Mrs. Mackland's illness, as well as the limited financial information available to the AO. However, the Initial Letter had requested additional financial information necessary to consider any collection alternative, including recent paystubs as evidence of their income, investment account statements as evidence of their assets, and evidence of economic hardship. At no point did petitioners provide the additional requested financial information. The Tax Court has repeatedly held that Appeals does not abuse its discretion by rejecting collection alternatives and sustaining the proposed collection action because of the taxpayer's failure to submit financial information requested to consider it. *See Orum v. Commissioner*, 123 T.C. 1, 13 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005); *see also Scanlon v. Commissioner*, T.C. Memo. 2018-51, at *24 (collecting cases and concluding that it was not an abuse of discretion to reject an installment agreement on the basis of a lack of financial information). Accordingly, Appeals did not abuse its discretion in declining to allow petitioners to enter into an installment agreement based on the limited information that it had.

Along with their request for an installment agreement, petitioners provided the IRS a completed Form 433–A showing significant equity in their home. They explained that they were interested in borrowing against the home equity in order to pay their tax liabilities and that they needed additional time to access the equity. Petitioners' expressed interest was consistent with the IRM guidance prioritizing borrowing for full or partial payment. Accordingly, the AO appropriately focused on allowing petitioners an opportunity to borrow to pay their tax liability. In considering a taxpayer's qualification for a collection alternative, such as an installment agreement, it is not an abuse of discretion to rely on guidelines set forth in the IRM. *See Orum*, 123 T.C. at 13.

By the time Appeals finally issued the NOD to petitioners, more than nine months had elapsed since the AO had first contacted them, which was already weeks after they had indicated the intent to obtain a loan against their home and could have begun attempting to do so. *Cf. Shanley v. Commissioner*, T.C. Memo. 2009-17, 2009 WL 195929, at *6 (taking into account the amount of time from a taxpayer's request for a CDP hearing in determining whether Appeals provided the taxpayer a reasonable amount of time to provide financial information). The AO, considering petitioners' unique circumstances, provided multiple extensions of time to allow petitioners to access the equity in their home.

**[\*14]** However, despite the allotted time and multiple requests from the AO, petitioners never produced solid proof of their attempts, such as copies of loan applications, loan commitment letters, or loan denial letters.

There is no set amount of time that Appeals must allow a taxpayer to arrange the taxpayer's affairs to facilitate collection, and the Court has held that Appeals does not abuse its discretion by not waiting a certain amount of time before making a determination. *See Scanlon*, T.C. Memo. 2018-51, at \*24–25; *cf. McCarthy v. Commissioner*, T.C. Memo. 2013-214, at \*11–12 (holding that Appeals also does not abuse its discretion by not setting a deadline by which assets must be monetized). Furthermore, it is not an abuse of discretion "to move forward with a determination after receiving no communication from the taxpayer" who has been given sufficient time to respond, *Powell v. Commissioner*, T.C. Memo. 2023-48, at \*6, as Appeals did a month after the AO's last call to the representative, which failed to spur action from petitioners. Given the AO's extreme forbearance, Appeals did not abuse its discretion in proceeding to issue the NOD sustaining the proposed levy action when it became apparent that monetization of petitioners' home equity was not coming to fruition.

Furthermore, the Tax Court has specifically held that Appeals does not abuse its discretion by rejecting an installment agreement if a taxpayer refuses to borrow against or liquidate assets to satisfy tax liabilities. *See Scanlon*, T.C. Memo. 2018-51, at \*23–24 (collecting cases and concluding that it was not an abuse of discretion to reject an installment agreement because taxpayers refused to borrow against individual retirement accounts); *Tillery v. Commissioner*, T.C. Memo. 2015-170, at \*17 (holding that a settlement officer acted in the bounds of his discretion in rejecting an installment agreement after the taxpayers made unsuccessful attempts to borrow against their assets); *McCarthy*, T.C. Memo. 2013-214 (holding that it was not an abuse of discretion to reject an installment agreement after a taxpayer attempted to borrow against assets and was approved for a loan but ultimately did not do so). Petitioners contend that the existence of a federal tax lien made it difficult to complete the loan process; however, there is no indication in the administrative record that petitioners made any request for the IRS to subordinate the tax lien under section 6325(d). In any event, any difficulty in obtaining a loan should not have prevented petitioners from providing proof of their attempts to secure the loan as requested by the AO. Although petitioners did not explicitly refuse to borrow against their home, and in fact claimed they were attempting to

**[\*15]** do so, their failure to provide any solid proof of their attempts could be understood as a refusal.

And finally, taxpayers requesting a collection alternative are required to request it with specificity, and "it is not an abuse of discretion for [Appeals] to decline to consider a collection alternative where the taxpayer does not put an offer on the table." *Powell*, T.C. Memo. 2023-48, at \*5; *see also Pough v. Commissioner*, 135 T.C. 344, 351 (2010) (finding that it was not an abuse of discretion to decline to enter into an installment agreement given that the taxpayer did not a submit a written proposal for such an agreement). Even if the AO had considered allowing petitioners to enter into an installment agreement instead of borrowing against their home, it would not have been an abuse of discretion for Appeals to decline to do so on the basis that petitioners neither proposed a specific installment amount nor provided financial information for the AO to analyze to determine whether any particular amount would be appropriate. *See White v. Commissioner*, T.C. Memo. 2024-53, at \*8 (collecting cases and concluding that Appeals could "properly have rejected any proposed collection alternative on either ground").

Petitioners ask this Court to remand this case to Appeals with direction to grant petitioners' request for an installment agreement. This Court has authority to remand a CDP case for consideration when remand would be helpful, necessary, or productive. *See Churchill v. Commissioner*, T.C. Memo. 2011-182, 2011 WL 3300235, at \*5–6 (collecting cases). In a case such as this, in which Appeals allowed reasonable time for responses to requests and thoroughly considered and addressed petitioners' arguments, but nevertheless rejected them, that standard is not satisfied, and remand is not warranted.

C.  *Balancing Analysis*

Petitioners allege that Appeals was incorrect in its assessment of "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *See* § 6330(c)(3)(C). They disagree with the determination in the NOD that the levy action, despite its intrusiveness, is necessary for the collection of tax. Appeals concluded in the NOD that it would be necessary to address petitioners' equity in their assets before establishing an installment agreement. The administrative record in this case does not show that Appeals acted in a manner that was arbitrary, capricious, or

**[\*16]** without sound basis in fact or law. Indeed, the administrative record shows that the AO attempted to accommodate petitioners. Given petitioners' ongoing failure to cooperate during the process for considering collection alternatives, it was reasonable for Appeals to reject the viability of such alternatives. Accordingly, Appeals did not abuse its discretion in its determination.

## *Conclusion*

Finding no abuse of discretion, this Court will grant the Motion and sustain Appeals' determination related to the levy to collect petitioners' unpaid liabilities for the 2017 and 2018 tax years. This Court has considered all arguments made by the parties and, to the extent they are not addressed herein, deems them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*